Eels *against* Finch.

THIS action was brought to recover a compensation for a quantity of timber. The third count in the declaration, on which the verdict was taken, was for goods sold and delivered. At the trial, the following receipt was produced in evidence : " *Peru, June* 17, 1807. Received of *Simon Eels*, in lumber, to the amount of 475 dollars, if said lumber holds out at the *Quebec Cull*, which sum is to be paid on an obligation and mortgage the said *Finch* has taken of the said *Eels*, and a debt of account I have against the said *Eels* of forty dollars. Received by me, *Isaac Finch*, jun." On the back of this paper, there was an indorsement, as follows : " For value received of *H.* and *A. Ellsmore*, I assign over to them the within obligation, and the suit in law that is commenced against the said *Isaac Finch*, jun. in the supreme court, where *Caleb Nicolls* is attorney. Dated *Peru*, 18th *January*, 1808." The defendant then proved, that the plaintiff acknowledged that he had settled the suit, and was satisfied, and that the settlement was afterwards made on the bond. It was proved that, in *April* or *May*, 1807, one of the *Ellsmores* gave notice to the defendant, that the plaintiff had assigned his right in the lumber, and the defendant then acknowledged the demand ; and that, subsequently, the defendant, in the presence of the *Ellsmores*, said he knew they had an assignment of the contract, but he wanted the money for other uses ; and he confessed he had sold the bond and mortgage referred to in the receipt to one *Dan. Smith*, but said that he could get the indorsement made upon the bond. To this evidence the defendant's counsel objected, insisting that the assignment ought to have been produced ; but the judge overruled the objection ; and,

*Where A.* gave to *B.* a receipt for lumber, to the amount of 475 dollars, if it held out on inspection, which sum was to be paid on a bond and mortgage from *B.* to *A.* and *B.* assigned over the receipt to *C.* and a suit was brought in the name of *B.* against *A.* for the lumber, as for goods sold and delivered ; of this assignment notice was given to *A.* who admitted that he had sold and assigned the bond and mortgage referred to in the receipt, to *D.* but that he could get the indorsement made on the bond. It was held, that as *A.* had not shown that the indorsement had actually been made on the bond, agreeably to the stipulation in the receipt, and the parties by their acts having waived the specific appropriation of the amount of the lumber to the payment of the bond, *B.* might maintain his action against *A.* for the lumber, as for goods sold and delivered.

NEW-YORK,
Nov. 1809.

EELS
v.
FINCH.

under his direction, the jury found a verdict for the plaintiff, for 482 dollars and 66 cents.

A motion was made to set aside the verdict, as against law and evidence, and for the misdirection of the judge.

*Foot,* for the defendant.

*Nicolls* and *Sherwood,* for the plaintiff.

YATES, J. delivered the opinion of the court. The question here is, whether this receipt ought, under the circumstances disclosed in this cause, to be deemed such an absolute payment on the bond, as to bar a recovery, on the count for goods sold and delivered.

It is a settled principle, that a court of law will regard the assignment of a *chose in action,* and protect the interest of an assignee, against any person having notice, or who is bound to take notice of it. The power of the original owner is so far at an end, immediately after an assignment and notice, that no subsequent payments made to him will avail ; and consequently no release or discharge from him can operate to the disadvantage of the assignee, for whom he is considered a mere trustee or nominal person, to recover the debt only ; and any personal interference on his part is deemed void, on the ground of fraud.* But, in this case, it is contended, that by the instrument itself, the amount was appropriated for a specific purpose, and that therefore it could not be assigned. This would be the legal operation of this paper, if the parties by their own acts had not subsequently manifested a different intent, and had not by such acts, revoked or changed that appropriation. The defendant declared that he had sold the bond, and could get the indorsement made. From this acknowledgment the inference is warranted, that it never had been done. Besides, if it had been indorsed, he ought to have shown it at the trial, as it would have been a proper defence.

* 1 *Johns. Cas.*
52. 54. 411.
1 *Johns. Rep.*
531. 3 *Johns.*
*Rep.* 425.

But it is said that this omission alone could not justify the recovery, as the assignee of the bond and mortgage took it subject to all the equity existing; and though not indorsed, it might still have been enforced. This reasoning would have been correct, had not the plaintiff also virtually assented to the arrangement made, by an actual sale of the receipt; and thus the destination of the property specified in this receipt was changed by consent of both parties, who, by these acts, have rendered the application of the amount, according to the original intent, utterly impossible; and have left both the debts assignable, as if no such appropriation had been mentioned in the receipt.

The subsequent interference of the plaintiff must be deemed fraudulent. His settlement with the defendant, consequently, cannot be received as a valid transaction. The only ground of defence, then, without countenancing fraud, was to prove the indorsement of the amount of the receipt on the bond and mortgage, before it was assigned. This was not done, and the verdict, therefore, was properly given for the plaintiff. The court, consequently, are of opinion, that the motion for a new trial must be denied.