ARRINGTON GUPTON AND WIFE, Appellants, *v.* A. MADISON GUPTON *et al.*, Respondents.

1. *Contracts — Care of aged persons — Contract for, contemplates what.*—In the execution of contracts to take care of aged persons, great patience with their infirmities is required. Such an agreement contemplates not only food, medicine and clothing, but good temper, forbearance, and an honest effort to please.

2. *Contracts — Agreement to dispose of property by will — Parol contracts — Statute of frauds.*—An agreement to dispose of property by will, in a particular way, if made on sufficient consideration, is valid and binding; and partial performance of a verbal contract of this description will take it out of the operation of the statute, when refusal to complete it would work a fraud on the other party.

3. *Contracts — Bill for specific performance, when proper.*—When the vendor of land by contract conveys the property contracted to be sold to a third person, in such a manner that the land can not be reached, the court will not entertain a petition in equity for a specific performance merely for the purpose of compensating the purchaser in damages, but will leave him to his action on the agreement. Some ground for equitable interference will be required, as when the contract is by parol and can not be enforced at law, but may be by proceedings in equity; or where the vendor has conveyed all his property, and a judgment for damages merely would be altogether useless.

### *Appeal from Sixth District Court.*

*H. M. Drummond* and *H. M. Boulware*, for appellants.

I. An agreement for valuable consideration to make a will in a particular way is valid in law and enforceable in equity. If the contract can not be performed literally and exactly, it will yet be performed substantially if it can be done. (Wright v. Tinsley, 30 Mo. 389; Davidson v. Davidson, 2 Beasley, N. J., 246; 3 Pars. Cont. 406, and notes *e*, *o*, *f*; 2 Sto. Eq. Jur., § 785; Van Dyne v. Vreeland, 3 Stockt., N. J., 370; Maddox v. Rowe, 23 Ga. 431; Johnson v. Hubbel, 2 Stockt. 332; 20 Ind. 223; Brinker v. Brinker, 7 Barr, 53.)

II. Respondent, in taking a conveyance from Barnett, with knowledge of appellants' agreement and part performance thereof, took in fraud of said agreement and of appellants' equitable title growing out of it, and can not avail himself of the protection of the statute of frauds.

III. The execution by Barnett of the will in favor of appellants was a sufficient memorandum in writing to satisfy the requirement of the statute. (Brinker v. Brinker, *supra;* Maddox v. Rowe, 23 Ga. 434; Bowles v. Woodson, 6 Gratt. 78; 9 Gratt. 1; 4 Harris & McH. 283; 2 P. Wms. 244; 6 Jones' Eq., N. C., 70; 20 Mo. 81; 15 Mo. 365; 10 Mo. 264; 6 Harris & J. 529; 1 Gill & J. 227; 2 Gill & J. 1; ·Connell v. Buckle, 2 P. Wms. 242.)

IV. The fifth section of the statute of frauds does not render a parol agreement, coming within its operation, void Its effect is to take away the right to enforce such agreement by suit. It affects the remedy, and not the validity of the agreement. (Léroux v. Brown, 12 C. B. 800; 14 Eng. L. & Eq., S. C., 247; Allen *et al.* v. Schuchardt *et al.*, Am. Law Reg., N. S., 1, 13, and note; Farrar v. Patton, 20 Mo. 81; 2 Sto. Eq. Jur., § 755.) The performance by appellants of their part of the agreement for four years was a sufficient performance of the agreement to exempt it, in equity, from the operation of the statute. It is well settled that the rendition of service not susceptible of accurate measurement in money, is such a part performance of the contract as to take it out of the operation of the statute. Particularly is this the case where the services partake of the nature of *pretium affectionis.* (Rhodes v. Rhodes, 3 Sandf. Ch. 279; Van Dyne v. Vreeland, 3 Stockt., N. J., 370; Davidson v. Davidson, 2 Beasley, N. J., 246; Watson v. Mohan, 20 Ind. 223; Watkins v. Watkins, 24 Ga. 402; Brinker v. Brinker, *supra;* 5 Wend. 638; 4 Ves. 720; 3 Atk. 4; 2 Stockt. 332; 8 Ind. 31.)

V. Plaintiffs are not barred of equitable relief by reason either of the subsequent conveyance by Barnett to his co-defendant, or by reason of the fact that Barnett was living at the time the suit was brought. (*a*) The agreement, *per se*, vested in plaintiffs an equitable estate in the land (*jus in re*), and equity will never require a party to abandon this equitable title for an action at law for a·breach of the contract. (*b*) A subsequent grantee, with notice of a prior agreement to convey either by deed or will, takes in fraud of such agreement, and is treated as trustee of the

first vendee or contractee. (2 Sto. Eq. Jur., §§ 784, 786, 788, 789 ; 1 Sto. Eq. Jur., §§ 382, 395, 396 ; Fortescue v. Hanna, 19 Ves. 67 ; Logan v. Weinholt, 7 Bligh, N. S., 1 ; Sugd. Law of Prop., H. L. C., 106 ; Randall v. Willis, 5 Ves. 262 ; Patton v. Farrar, 20 Mo. 81, and other Missouri cases above cited ; Johnson v. Hubbell, 2 Stockt. 332 ; Van Dyne v. Vreeland, 3 Stockt. 370.) (c) This proceeding is in the nature of a proceeding *in rem* to declare and enforce a trust as against the subsequent grantee with notice. Neither the existence of this trust nor the right to enforce it in equity is dependent upon the death of Barnett. The trust sprang up when the subsequent deed was received, and the right to enforce it arose when the trust itself came into existence. A right of action either against Barnett or his grantee to enforce the agreement in this case, as in all other cases either in law or equity, sprang up when a breach of the agreement occurred ; and the execution of the subsequent deed was a breach of the agreement. (Davidson v. Davidson, *supra;* Van Dyne v. Vreeland, *supra.*) The fact that this agreement was by parol, but so far performed as in equity to be exempted from the operation of the statute of frauds, is of itself a sufficient ground of equitable relief; for otherwise the party would be utterly without remedy, inasmuch as an action at law for damages for its breach is absolutely barred by statute. (Lee v. Howe, 27 Mo. 523 ; 2 Sto. Eq. Jur., § 798 ; Pembroke v. Thorpe, 3 Swanst. 437, n.; Kirk v. Bromley Union, 2 Phill. 648.)

*Anderson, Lipscomb & Redd*, for respondents.

I. If Morgan L. Barnett did, in point of fact, as alleged, promise to devise the lands to plaintiff by will, there is no note or memorandum of such contract, in writing, signed by him ; and such promise is void under the statute of frauds. (See R. C. 1855, p. 807, § 5 ; Whaley v. Bagenal, 6 Brown's Parl. Cas. 45 ; Moore v. Edwards, 4 Ves. 22–3 ; Cooth v. Jackson, 6 Ves. 38–40.)

II. The furnishing of Barnett and wife with a home from 1863 to 1867 is not such part performance as will take the case out of the operation of the statute of frauds. For such service rendered, plaintiffs have a direct and adequate remedy by action

at law. (Moore v. Edwards, *supra;* Clinan v. Cooke, 1 Sch. & Lef. 40 ; Hollis v. Whiting, 1 Vern. 151.)

III. The contract between plaintiffs and Barnett, as set out in the first count, was verbal, and has not in all its terms and stipulations been clearly proved ; and a court of equity will not, under such circumstances, grant specific performance, even in a case where there has been part performance, but will leave the party to his remedy at law. (2 Sto. Eq., §§ 764–7 ; Emery v. Wase, 5 Ves. 846.)

IV. It was not in the power of Barnett to perform the contract, viz : convey by will at the time this action was brought (because he had previously conveyed by deed) ; and plaintiff instituted this suit with full knowledge of the fact. In such case specific performance will not be decreed. (McQueen v. Chouteau's Heirs, 20 Mo. 222 ; Hatch v. Cobb, 4 Johns. Ch. 560 ; Hempshall v. Stone, 5 Johns. Ch. 195.) This rule is recited and recognized in the case of Wright v. Tinsley, 30 Mo. 399, cited by plaintiffs ; but in that case the promise being that he would leave by will a share of his estate, and the promisee being dead and his estate in a course of distribution, the court could substantially execute the contract by decreeing plaintiffs a share in making distribution.

V. The specific distribution of the contract relied on in this case involves an impossibility. By the terms of the contract the title is to be conveyed by will. No title can pass by will in the lifetime of the testator. Hence, by the terms of the contract, plaintiff was not to have the land until Barnett's death. The court can not compel Barnett to make a will. If made on compulsion it would not be his will. If made voluntarily, the court can not deprive him of the power of revocation. If made voluntarily and permitted to stand unrevoked to the time of Barnett's death, it would not vest in plaintiff any title to the lands in dispute, because he conveyed all his title by deed in his lifetime. The case of Wright v. Tinsley is clearly distinguishable from the case at bar. In that case there had been no conveyance of the subject-matter of the contract. The time fixed by the terms of the contract when the plaintiff should have the property, had

arrived; the promisor was dead, and his estate about to be distributed.

VI. Specific execution will not be granted in any case where, from the nature of the contract, the remedy is not and can not be mutual.

BLISS, Judge, delivered the opinion of the court.

This is a petition for the specific performance, or for compensation for its breach, of a contract to make a will in favor of plaintiff. The plaintiff, Mrs. Gupton, is a daughter, by a former marriage, of Celia Barnett, wife of Morgan L. Barnett, both defendants; and the petition alleges that said Morgan L. Barnett, being himself childless, seventy-three years of age, and very infirm, applied to the plaintiffs to take him and his wife to their home, and take care of them during their lives, and, in consideration, agreed to devise and bequeath to them the land in controversy; that plaintiffs accepted the proposition, and in the fall of 1862 took defendants, Morgan and Celia Barnett, into their house, who became members of the family and were kindly and faithfully cared for by the plaintiffs, who are still ready to keep them in comfort and happiness during their lives; that, in pursuance of said agreement, the said Morgan, in 1865, destroyed an old will, and made a new one devising and bequeathing to petitioners all his property; that the possession of the farm in controversy was given up to plaintiff, Arrington, who made improvements upon it, rented it out, and paid the taxes. The petition further shows that on the 10th day of August, 1867, the said Morgan L. Barnett, in violation of his agreement, without consideration, and with full knowledge by the parties of all the facts, conveyed the principal part of his said farm to said A. Madison Gupton, and the remainder to his wife, the said Celia, who have taken possession of the same. The petition closed with several specific prayers and with a prayer for general relief.

The answers deny any agreement to make a will, though they admit that the will was made, and also admit that it was the intention of the testator to dispose of his property according to its provisions, until diverted therefrom by ill–treatment. They also

show that the consideration of the conveyance to A. Madison Gupton was the support and maintenance of Barnett and wife during their lives.

There is some conflict in the testimony upon a few points, but certain facts are clearly established. At the time Mr. and Mrs. Barnett came to live with complainants, Mr. B. was in failing health, and his servants having left him, he was unable longer to work his farm. A room in the house and its furniture were given up to them; when he was able he came to the common table, and at other times his meals were taken to his room. The universal testimony is that both were treated with kindness and consideration, and were happy and contented until some difficulties arose between the parties. Mr. Barnett was a large man, had had one leg broken a few years before, from the effects of which he never recovered; was in general bad health, and needed much attention, while Mrs. Barnett was active and in good health. It also is shown that both of them possessed bad tempers; that Mr. B. was in the habit, when out of humor, of saying very sharp things, and that Mrs. B. was also excitable. In 1865 Mr. B. had a paralytic stroke, which quite disabled him and increased his irritability. On the other hand, as all the witnesses testify, Mr. Gupton, the plaintiff, possessed an unusually even temper; he never responded to Mr. Barnett's reproaches in an angry manner, but would either undertake to explain matters or say nothing. The only evidence of ill treatment is contained in the testimony of Mr. Barnett, who says that about two years after they went to live with Mr. Gupton he became sullen and would not come into the room for a long time. He (Barnett) had complained of Gupton's getting men who owed him (Barnett) money to work it out for him. He collected $9 of one man and $10 of another in that way, and said that he called on him to pay him, and he came into his room with witnesses and paid him $20. The next time he came in was three months afterward, and he (Barnett) asked him why he brought witnesses when he paid him the $20. He said, "I never come in but you annoy me," and slapped his hat down on the floor, and left with Mr. Sharp. He seemed angry. He says afterward that "they failed to treat

me as they had promised.   I could live with them no longer in consequence of their conduct to me," etc.   On cross-examination he says : " I found it morally impossible to live with them, and would have left before I did if I could have walked.   The treatment of Arrington Gupton, plaintiff, was generally kind, except when he was sullen or refused or neglected to come into my room ; and that of plaintiff, Melvina, was kind and affectionate for the first fifteen or eighteen months ; and after that, and until I left there, she only occasionally visited my room ; and at one time she told me I must leave the house.   The other members of the family were uniformly kind and affectionate to me.   I was then, as now, entirely unable to help myself either in or out of my bed, and toward the last of my stay at plaintiffs' I was usually attended by my wife and a negro woman sent there by Stephen Gupton ; and the day before I left they drove her away ; was bountifully supplied with food," etc.   The family physician, who drew the will in 1865, after the stroke of paralysis, but left the neighborhood soon after, is very emphatic in his testimony as to the kind treatment Barnett always received.   Mr. Sharp, a near neighbor, who was in very frequently and was cognizant of the difficulties between the parties, says they sprang up about a year before Barnett left, and in 1867 he was sent for to help make peace ; that " there seemed to be a difficulty between Mrs. Barnett and her daughter, and the men were brought into it.   Mr. Barnett complained that Mr. Gupton had paid his debts with his (Barnett's) money — had defrauded him ; also, that he (Barnett) had a note on one Birch, and that Birch had threshed wheat for Gupton, who had paid him with said note.   Mr. Gupton said he had been authorized to collect the note in that way.   Mr. Barnett said Gupton had sold a mule of his, and had not paid him.   Mr. G. said he intended to pay for the mule and note.   Mr. Barnett was very sarcastic and cutting ; Mr. Gupton was respectful and kind ; he made no response to Mr. Barnett's severe language," etc.   After that, witness was there again, and Barnett complained to Gupton that he had brought witnesses to his paying him money, but Gupton told him it was not for that purpose, but to convince him that he (Barnett) had been mistaken in some matters.   The

witness testifies at considerable length to their interviews, but no instance of ill or disrespectful treatment on the part of Gupton occurs. Mr. Davis, a school-teacher, boarded in the family in the spring of 1866; speaks of Barnett's helpless condition; says that he was well provided for, was contented and happy, and everything was harmonious. Mr. Garner, a relative of defendant (Barnett) by marriage, visited them in August, 1866; found them contented and happy, and Mr. B. told him he had given Mr. Gupton his farm; that "he had got to the right place, with his children, where he was cared for as he wished to be, and that he expected to live there the balance of his days." Mr. David, a friend of the families, testified that Barnett seemed contented early in the spring of 1867, but in April trouble grew up from an attempt to convey the property to one Turner; says he was at the house, and that a dispute had sprung up between Mrs. Barnett and her daughter, growing out of a report that they were giving the farm to Mr. Turner and had destroyed the will; but this matter was settled.

I have thus noticed, and as briefly as possible, the evidence in relation to that most material part of the case, the treatment of Mr. Barnett. The only evidence of anything but the greatest consideration and kindness is contained in Mr. Barnett's testimony, and the record shows that in several other matters his memory was quite infirm. In the execution of contracts of this kind, great patience with the infirmities of age is imperatively required. It is necessarily a part of the contract that he who assumes such cares shall seek to smooth the path of declining years. The property conveyed is not only a consideration for food, medicine, and clothing, but for good temper, forbearance, and an honest effort to please. There is a vast difference in the temper of men on the down-hill of life. Some show the brightness and serenity of the clear evening sky, while many, as reason grows dim, seem given up to petty jealousies and passions. The former condition may be hoped for, yet the latter may be expected; and those who undertake the care of the old for the accumulations, little or great, of their former industry, must be held to undertake something more than the duties of the keeper of a

boarding-house. While enforcing this obligation upon those who stand in the relation of the present plaintiffs, we should remember that contracts are mutual, and that the delicate character of this class of agreements all the more entitles him who has faithfully furnished the service and care, to his stipulated reward. It is hard to measure their price in money; for who can say how much it is worth to meet and manfully bear the caprices of unreasoning and fretful age?

From a careful examination of all the evidence bearing upon this part of the case, I cannot find that the plaintiffs failed in living up to the spirit of their agreement. It does not appear that any discontent had arisen in the mind of Mr. Barnett until the latter half of the fourth year of his residence with them, and we have seen how trifling were the first causes. An old man, nearly eighty, struck with paralysis, unable to walk, who, as he says, had recently given hundreds of dollars to the plaintiff and his family, who had made his will, leaving them everything, became excited about the collection of a few dollars by the one who was soon to receive everything; and when he paid him, while others were present, charges him, the next time he calls upon him, in a sarcastic and cutting manner, with bringing in witnesses to see it paid. It is manifest that the whole trouble was in the excited mind of Mr. Barnett, but how the feeling arose and increased does not appear from any direct testimony. It could not have sprung from Gupton and wife absenting themselves from his room, as he charges them both with doing, because it was the cause of and not the effect of their being less familiar, and because, from the whole testimony, it is clear that his recollection of time, as well as events, is not to be relied on. A fact or two, however, throws a little light upon the matter. Defendant, A. Madison Gupton, is a nephew of plaintiff and was a frequent visitor at his house. In April it is shown that he asked Mr. Barnett to let him have his farm, and he would take care of him. Nothing further appears except that about the first of August, while the plaintiffs were away from home for some ten days, this Madison brings a magistrate to Mr. Gupton to acknowledge the deeds, and then the whole matter was closed up. This

man, a frequenter at the house, his eye on the farm from the beginning of the troubles, his final success in obtaining the property — put these facts together, and may we not conjecture that he at least was not indifferent to the continuance of the difficulties that were about to prove so fruitful to him ?

That an agreement to dispose of property by will in a particular way, if made on a sufficient consideration, is valid and binding, is settled in this State by Wright v. Tinsley, 30 Mo. 389, where the subject is considered at length and the authorities reviewed.

The statute of frauds is set up as a defense, inasmuch as the original agreement was not made in writing. But this defense will not avail for the obvious reason that the contract was in a great measure performed by both parties. The plaintiffs took Mr. and Mrs. Barnett to their house and provided for them until they left. The possession of the farm was also surrendered and the will was executed according to the terms of the contract. Nothing remained to be done by either party except the continued support of the makers of the will, which is tendered by the plaintiffs. Such partial performance has always been held to take the case out of the statute. (20 Mo. 84 ; 45 Mo. 288 ; Sugd. Vend. ch. 3, § 7, and cases cited in notes; 2 Sto. Eq., § 759 *et seq.*) Contracts like the one under consideration have been before the courts, and have uniformly been held to be valid when partially performed, and when the refusal to complete them would work a fraud upon the other party. In Brinker v. Brinker, 7 Penn. St. 53, such an agreement was sustained, not because possession of the property was delivered, but because the will was executed. according to the terms of the agreement.

The cases of Van Dyne v. Vreeland, 3 Stockt., N. J., 370, and Davidson v. Davidson, 2 Beasley, N. J., S. C., were both very similar to the present, and the verbal promises of the owners of the property were enforced for the reason that the services and support contracted for had been rendered.

Defendants claim that the plaintiff is entitled to no relief in this action for the further reason that Barnett, by his deed to Madison Gupton, has put it out of his power to dispose of his property by will ; that in any event the contract can not be fully

executed until the death of Barnett, and hence his only remedy is by a suit for damages for a breach of the agreement. In support of this claim reliance is had upon McQueen v. Chouteau's Heirs, 20 Mo. 222, and upon Hatch v. Cobb, 4 Johns. Ch. 559, and Kempshall v. Stone, 5 Johns. 193, cited in that case. McQueen v. Chouteau's Heirs was a bill for specific performance founded upon a contract to sell, and the vendor had conveyed the property to a third person after having offered to fulfill. Upon this point the judge remarked that, in cases similar to this, courts of equity have refused to decree a specific performance of the contract, and have refused to entertain the bill for the purpose of compensating the complainant in damages, but have left him to his action at law on the agreement. The court, it will be seen, adopts no general rule, and the cases referred to are entirely consistent with the plaintiffs' equity, even if specific performance could not be decreed.

Hatch v. Cobb was a case where the purchaser of land by contract had neglected to pay, and, after its conveyance by his vendor, filed his bill. The court decided that specific performance could not be decreed, that the complainant was not entitled to compensation in equity, and remitted him to his suit upon his covenant for damages if he was entitled to any. The court, however, admits that, in a special case, a bill for damages might be sustained; and, in referring to Phillips v. Thompson, 1 Johns. Ch. 131, where the bill was retained in order to afford compensation, says that the court made out a case of very clear equity for relief, and the remedy was precarious at law. The bill was dismissed in Kempshall v. Stone because "the remedy was clear and perfect at law by an action upon the covenant," the defendant having conveyed the land to a third person, for good consideration, without notice.

The doctrine of these cases is simply this: that when the vendor of land by contract conveys the property contracted to be sold to a third person, in such a manner that the land can not be reached, the court will not entertain a petition in equity for a specific performance merely for the purpose of compensating the purchaser in damages, but will leave him to his action upon the agreement. Some ground for equitable interference will be

required, and in the case at bar there is abundant ground, even if the contract could not be specifically enforced. First, it is a parol contract, which can not be sued on at law, but which equity will enforce under the circumstances heretofore indicated. Second, Barnett has conveyed to Madison Gupton all his property, and a judgment for damages merely would be altogether useless. It must be made to fasten upon some property which can only be reached in equity, not by a creditor's bill, but as being subject to the plaintiffs' claim by the terms of the contract, or he is wholly without remedy. Third, the case made by the petition is altogether and throughout equitable; and having thus obtained jurisdiction, the court will give the plaintiffs any relief to which they are entitled.

A. Madison Gupton took with full notice, and in fraud of complainant's rights, and it is not in his power to remit us to a money demand. It would be a mockery, as well as a bounty to an unwarrantable interference by strangers in a case like the present, to say that the plaintiff is entitled to only a money judgment; and our courts have gone as far as any other in giving effectual relief. (Wright v. Tinsley, *supra;* Lee v. Hare, 27 Mo. 521.)

We feel some embarrassment in deciding what order or decree should be rendered in the premises, though we are partially relieved by the suggestion that Barnett has died since the trial below.

It should be the first and paramount duty of the court to see that the property in dispute is used for the support and maintenance of its beneficiaries, and to promote, as far as practicable, their comfort and happiness. But, in doing this, we must also remember that this is a contract binding and obligatory upon the parties, and not subject to overthrow by mere caprice; otherwise it might be found to be very difficult for the aged and infirm, with moderate means, to make provision for their permanent support.

Davidson v. Davidson, *supra,* was a case very much like the one at bar. A younger son had worked many years upon the farm for the support of his parents, under a verbal understanding that it was to be devised to him. A will was made, but the parents, having quarreled with their son's wife, turned them off

the place and conveyed the property to his elder brothers upon the consideration of their support. The court decreed that, upon performance or offer of performance of the contract, on his part, the complainant will be entitled to the farm upon the death of the father; that the deed to his brothers be set aside as fraudulent, and that they be restrained from alienating or encumbering the land. But, inasmuch as the father was still living, the court declined to make any present decree for specific performance.

In Van Dyne v. Vreeland, *supra*, under circumstances somewhat similar, a decree was rendered that the strangers to whom the property had been conveyed should be declared " trustees, to hold the property during the life of Vreeland and wife (the beneficiaries) for their benefit, and after the death of the one that survives, to convey the property to the complainant."

The case at bar should be remanded to the Circuit Court, and as the death of defendant Barnett has been suggested upon the records of this court, and his representatives made parties, the case is ready for final action in that court. Defendant, A. Madison Gupton, has had the care and charge of Mr. and Mrs. Barnett since August, 1867, and has also made improvements of permanent value upon the farm. An account should be taken, crediting him with the value of such improvements and a reasonable compensation for such care and charge, and charging him with the rent of the farm, and, upon payment to him of any balance that may be found to be his due, he should be decreed to convey the property in dispute to the plaintiffs. The care and maintenance of Mrs. Barnett during her life must be carefully secured. It is hoped that the natural feelings between the mother and daughter will have returned, and that she will return to the family of plaintiffs, and be willing to convey to them the forty acres given her at the time of leaving them. If not, she should be decreed to hold the same in trust, for her own use during her life, remainder in fee to complainants or their heirs, at her death.

The judgments of the courts below are reversed and the cause remanded, with directions to proceed as herein indicated. The other judges concur.