Sharkey v. McDermott.

SHARKEY, *Appellant,* v. McDERMOTT *et al.*

1. **Contract:** PART PERFORMANCE : STATUTE OF FRAUDS : ADOPTION OF CHILD. An agreement by a man and wife to adopt plaintiff as their child, and to provide and care well for her, and leave her

| 91 | 647 |
| 97 | 104 |
| 32a | 110 |
| 91 | 647 |
| 99 | 483 |
| 91 | 647 |
| 48a | 23 |
| 91 | 647 |
| 113 | 346 |
| 91 | 647 |
| 118 | 669 |
| 91 | 647 |
| 122 | 299 |
| 91 | 647 |
| 133 | 37 |
| 91 | 647 |
| 69a | 11 |
| 91 | 647 |
| 143 | 56 |

Sharkey v. McDermott.

their property, at their death, is taken out of the operation of the statute of frauds, where plaintiff fully performed the contract on her part by living with and obeying them as parents, and paying them her wages, and where the contract was partly performed by them by providing for and maintaining plaintiff during a number of years.

2. ———: PRACTICE: PLEADING: PRESUMPTION. Where a petition declares upon a contract, without stating whether it is in writing or not, it will be presumed to be in writing.

3. ———: SPECIFIC PERFORMANCE: ADOPTION OF CHILD. A man and wife entered into an agreement to adopt plaintiff as their child, and leave her their property at their death, but failed to execute the agreement as to the adoption. Plaintiff wholly performed the agreement on her part, by living with them and paying them all the attentions due from a child to parents, for many years. The husband died, leaving the property to his wife. Plaintiff continued to live with the wife, as before, until the latter died, intestate. Held, that the contract was a valid one, and that plaintiff was entitled to its specific performance, as to the disposition of the property, she having the paramount claim of a creditor, or equitable owner, in consideration of her services.

4. ———: ———: ———: PRACTICE. Plaintiff had no right of action for the property, under the agreement, until after the death of both husband and wife.

5. Practice: PLEADING. If sufficient facts are stated to entitle a party to relief, the conclusions of law the pleader may draw from them, and the particular relief he may ask, may, if necessary, be disregarded, and the court may grant any relief consistent with the case made by the plaintiff and embraced within the issues.

*Appeal from St. Louis Court of Appeals.*

REVERSED AND REMANDED.

The petition in the case avers, in substance, that the plaintiff was given by her mother, a widow, to Catherine McLaughlin, the wife of James McLaughlin; that this occurred in January, 1862, at which time plaintiff was an infant of four years; that the arrangement between the adults, as to the care of the child, was, that she was to be legally adopted by them, and inherit their property; that she continued to reside in the household of James

and Catherine until 1876, at which time James died; that, during the time she was in the household, she was told by both of them that she was their legally-adopted child, and would inherit their property; that, so soon as she was large enough to work, she was put out at service, and all her wages collected and appropriated by James and Catherine, both of whom were childless; that, after the death of James, and the publication of his will, it was ascertained that he had willed to the plaintiff one-half of his whole estate, but afterwards, by codicil, revoked the bequest, and left the entire estate to Catherine; that she was told by Catherine, and the fact is averred in the petition, that the codicil was written because James feared that, becoming independent, plaintiff might refuse to longer recognize the relationship of adopted child, and refuse to live with Catherine; that, after the death of James, she continued, under the same conditions, to live in the household of Catherine; that she was, by Catherine, held out to the world as her adopted child; was, by said Catherine, repeatedly told that she was her legally-adopted child, and would inherit, by reason thereof, all of her property. It is further averred that the defendants were all of age, were frequent visitors at the house, fully aware of the relationship and circumstances surrounding them, and the expectations of the plaintiff, and acquiesced in and acknowledged the same; that, after the death of James, she remained in the household of Catherine, Catherine receiving and appropriating all of her wages; she did all of the sewing and other household labor of Catherine; continued to live with and serve Catherine, discharging for her all of the duties commonly discharged by a child for its parent; that she yielded the same obedience and the same affection as would have come from a child to its parents, at all times, supposing that she had been legally adopted and was their heir; that Catherine died suddenly, leaving no will, and plaintiff

learned, for the first time, that she had not been adopted; that she was of too tender an age to require a deed when the arrangement was first made, and, after growing older, trusted entirely to the statements of James and Catherine; that she has contributed the earnings of the best years of her life, and a long service, under the conviction that she had been adopted, and that she would receive the property at the death of James and Catherine, and defendants are now seeking to deprive her of her rights. Plaintiff asks to have her right of adoption established, and to be declared an heir-at-law of said Catherine, and for all further and other relief as the facts in the case may warrant and the court may deem proper.

*M. F. Taylor* for appellant.

(1) Where one, by reason of confidence in the representations and statements of another, has expended money and services, the court will decree a specific performance of a contract to inherit. *Van Dyre v. Vreeland*, 11 N. J. Eq. 370; s. c., 12 N. J. Eq. 142. (2) An agreement to dispose of property by will, in a particular way, if made on sufficient consideration, is valid and binding, although the circumstances may render it impossible to specifically enforce such agreement exactly, yet substantial specific performance will be decreed. *Wright v. Tinsley*, 30 Mo. 389; *Gupton v. Gupton*, 47 Mo. 37; *Hamilton v. Hamilton*, 59 Mo. 232; *Sutton v. Hayden*, 62 Mo. 101; *West v. Bundy*, 78 Mo. 407; *Anderson v. Shockley*, 82 Mo. 250.

*Broadhead & Haeussler* for respondents.

(1) Plaintiff's motion for a new trial was not filed within four days after judgment, as required by statute. (2) In this state, the mode of adoption is prescribed by statute, viz: by deed duly executed, acknowledged, and

recorded. Revised Statutes of Mo., 1879, sections 599-
601. (3) Courts of equity cannot dispense with the reg-
ulations prescribed by statute; otherwise, equity would,
in effect, defeat the legislative enactment.   Story's Eq.,
secs. 96, 170; *Long v. Hewitt*, 44 Iowa, 363; *Houck v.
Bates County*, 61 Mo. 391; 56 Iowa, 578; *Tyler v. Rey-
nolds*, 53 Iowa, 146; Schouler's Domestic Relations,
sec. 232.   (4) The alleged promise, if made, was the
agreement of James McLaughlin solely.   Catherine, a
married woman, was incapacitated in law to contract in
the respect alleged, and any promise by her, as alleged,
being void, no ratification could be made when discovert.
*Kernan v. Martin*, 8 Mo. 698; *Musick v. Dodson*, 76
Mo. 627.   (5) Any right of action plaintiff might have
had at the death of James McLaughlin, in 1876, is
barred by laches and the statute; when the facts disclose
laches, the court will refuse relief.   *Kelley v. Hurt*, 74
Mo. 561; *Godden v. Kemnen*, 99 U. S. 211; *Sullivan
v. Railroad*, 94 U. S. 807.   (6) The only remedy plain-
tiff might be entitled to, under the allegations of her
bill, is an action for her services and earnings given up
by her, if any, and in that action the administrator
would be the only proper party defendant.   (7) Even if
the circumstances alleged constituted a valid adoption of
plaintiff by James McLaughlin, she stood in no better
position than a lawfully-begotten child.   (8) Any agree-
ment to make a will is not superior to a will which may
be revoked by a subsequent will.

RAY, J.—This action was disposed of, upon a de-
murrer to the petition, which is of considerable length,
and appears in full in the opinion of the St. Louis
court of appeals, 16 Mo. App. 80.   The correctness of
the ruling of the trial court in sustaining the demurrer,
and entering judgment thereon in favor of the defend-
ants which was afterwards, affirmed in the court of

appeals, is the only question now involved in the case.

We are not able to concur in the view of the petition, and of plaintiff's rights, as therein declared, adopted and entertained by said courts. In the first place, the statute of frauds, we apprehend, cuts no figure in the case, for the reason that it appears plaintiff has fully performed the contract on her part, and the same has also been performed in part by the other parties thereto, and to the extent of providing for and maintaining plaintiff during said years. *Gupton v. Gupton*, 47 Mo. 37 ; *West v. Bundy*, 78 Mo. 407 ; *Anderson v. Shockley*, 82 Mo. 250.

Besides this, it is not stated in the petition that the alleged agreement was oral, but the same is declared on without stating whether it is in writing or not, and where this is so, the contract is presumed to be in writing. Browne Stat. of Fraud, sec. 505.

Again, the fact that the suit is instituted after the death of the parties making the contract, is not important, in determining the demurrer, which admits the facts stated, and from which it appears that there was no breach of the contract upon which the plaintiff could maintain any action until the death of the said parties and each of them. The death of James McLaughlin, which occurred in 1876, did not give her a right of action for the property, as by the terms of the agreement it was to be left to her at their death, and not his ; so that, until the death of the survivor of them, no right of action thereon existed in her favor. So far as the original contract is concerned, it is, as has been pointed out, to be taken as the contract of said James McLaughlin alone, the said Catherine being then under the disability of coverture, and whilst the petition may indicate, in some of its allegations, that said Catherine and said plaintiff both supposed that plaintiff had been adopted, still it charges "that after the death of said

James plaintiff still continued, under the same conditions, to live in the household of said Catherine," which means, we think, the mutual or reciprocal conditions of the original agreement, made between said James McLaughlin and the mother of plaintiff.

There are other allegations in the petition, material in this behalf, such as that the said James McLaughlin revoked the will in plaintiff's favor, as to one-half the property, by said codicil, devising the whole to said Catherine, which she took under the will, and that this was done to avoid making plaintiff independent, and to secure the continuation of said services and relationship of plaintiff to said Catherine, after his death; that said Catherine thereafter continued to hold plaintiff out to the world as her adopted child, and to tell her she would inherit the property, and continued to receive and appropriate the wages of plaintiff of the alleged value of twenty-five hundred dollars, to her own use and benefit, whilst the plaintiff, on her part, continued, at the same time, to be obedient, dutiful, and affectionate, and to do the family sewing and household labor, and such other duties as are commonly done by the child for a parent. So that, although the original agreement may not have been binding upon her, by reason of her coverture at the time, yet the facts alleged show, we think, an agreement similar in substance and effect to the original, entered upon by her after becoming discovert, upon adequate consideration, which she has held and enjoyed.

But if this were not so, yet, under the facts, the wife's right and title to the property, under the will of her husband, would, in equity, be coupled with, if not subordinate to, the prior or paramount charge of plaintiff's equities thereto, under said contract with the husband. So that, in any event, the result is the same. As to said original agreement, it clearly appears, from the petition, that in January, 1862, James and Catherine McLaughlin took plaintiff, then four years of age, from

her mother, then a widow, upon a promise made to her, which was as alleged, "that they would provide and care well for her, and adopt her as their child, and *leave her their property at their death*."

As between parents and their children, a natural relation of this sort exists independent of contract between them to that effect, and similar service on the part of a child will not, it is true, give any right to a will in his favor, or to a transfer to him of his parent's property, and it may be conceded that a direct agreement to that effect might, as between them, be non-enforceable for want of consideration. A formal deed of adoption places the child adopted, under the statute, on a similar footing, in all respects, as to the person executing the deed, which the child has, by law, against lawful parents.

If the plaintiff had been duly adopted by the McLaughlins, as was promised, we do not see, as is held by the court of appeals, that, under the facts disclosed, her position would be that of a disinherited daughter, first by the father, and afterwards by the mother. So far as the father is concerned, she would be thus disinherited, as his will was drawn in favor of the wife. But she would be the heir of her adopted mother, who, after taking the property under the will of her husband, died intestate, and, in that event, plaintiff would take, under the law, as provided in the statute of descents.

But the rights of plaintiff, if any, in this case, do not spring either from the general law, applicable to parent and child, or from said statute authorizing the adoption of children, for the reason that plaintiff was not the daughter of these parties by nature ; nor had she been formally adopted by them by deed duly executed as the statute requires. Her rights in the premises, if any, depend, we think, entirely upon said agreement and the action had thereunder by the parties thereto. This agreement was not merely and solely one

to adopt the plaintiff, but was in part to leave the plaintiff the property at their death. The fact that the parties, and each of them, may have failed and neglected to execute it, so far as the adoption was concerned, should not, we think, exonerate them from its further obligation to transfer their property, when they could no longer use it, to plaintiff, but if the plaintiff is without the status of an adopted child, through no fault of her own, but through the neglect of those so promising, this is only additional ground for the enforcement of the contract as to the disposition of the property, if the necessary equitable facts and circumstances are properly alleged.

The question, then, is, whether this is a valid agreement executed upon sufficient consideration, and whether, being wholly performed by plaintiff, a party thereto, she is not entitled, upon the death of said James and Catherine McLaughlin, without performance thereof on their part, to a specified performance of the contract and to hold and enjoy the property so contracted for, at their death, as against these defendants, who are the brothers and sisters of the said Catherine, deceased. If such a contract may lawfully be made by the parties, then the parties defendant to this suit stand in the relation of heirs-at-law, if anything, to the estate of the decedent, whilst the plaintiff, having performed the services and yielded the obedience required of her by the contract, and having fulfilled the same, has the paramount claim of a creditor, or equitable owner of the property contracted to be given her in consideration of her said services.

We see no valid and sufficient reason why the case should not be controlled by the principle and rule laid down by this court in *Wright v. Tinsley*, 30 Mo. 389 ; *Gupton v. Gupton*, 47 Mo. 37 ; and *Sutton v. Hayden*, 62 Mo. 101. In the first of said cases just cited, it is said that "on principle, there would seem to be no ground to

doubt that a person may, by valid agreement, renounce the power to dispose of his property at his pleasure ; may bind himself to make a will, in a particular way, on proper considerations, and that courts of equity would enforce such agreements under proper circumstances, the same as in other cases of valid contracts." In the case at bar it was not specified in said agreement how the transfer of the property was to be made, but whilst this is true, it is, we think, immaterial, as was said in *Sutton v. Hayden*, 62 Mo. 101, "the intention to transfer the property is the chief thing, the method by which the intended result was to be attained was wholly immaterial. The contract entered into might well have been discharged by deed or will."

In *Gupton v. Gupton, supra*, it is said : " Contracts, like the one under consideration, have been before the courts, and have uniformly been held to be valid when partially performed and when the refusal to complete them would work a fraud upon the other party."

The cases of *Van Dyne v. Vreeland*, 12 N. J. Ch. 1, and *Davison v. Davison*, 2 Beasley [N. J.] 246, are both very similar in their facts to the present case, and in these cases, verbal promises of the owners of the property were enforced upon the grounds that the services and support contracted for had been rendered. Under the view we have taken that plaintiff's rights, if any, depend upon the agreement entirely, the absence of a statute of adoption in New Jersey, which is commented on by the court of appeals, in no wise affects the authority of these decisions. The obligations of the contract in question as of others are mutual, but the peculiar character of agreements of this sort, it is said, all the more entitles him who has faithfully performed the service and care to his stipulated reward. *Gupton v. Gupton, supra*. In this class of cases it is impossible to estimate, by any pecuniary standard, the value to the recipient of the services rendered, and such

Sharkey v. McDermott.

services are not designed or intended to be so measured. The contract is originally so created that the consideration which the party receives cannot be returned, and after the performance of the services it is beyond the power of the party and of the courts to restore the plaintiff in such cases to the situation in which he was before the contract was made. Browne Stat. Fr., sec. 463.

The objection that, under the facts of this case, a decree for plaintiff would be in effect making a will for said Catherine, is not, we think, at all sound. This the court may not do, but it may, by its judgment under this state of facts, make effectual what the parties have themselves agreed upon, and that is the object and purpose of the petition.

Some of the allegations in the petition would indicate its principal object or purpose to be, to obtain a decree establishing plaintiff's right of adoption, and declaring her heir-at-law of said Catherine McLaughlin, in virtue of said adoption. To that effect is the prayer for relief, but the prayer, also, is to declare her heir-at-law, by reason of the premises, and "for all *other and further relief*, as the facts in the case may warrant, and the court deem proper." Under our practice, if sufficient facts are stated to entitle the party to relief, the conclusions of law the pleader may draw from them, and the particular relief he may ask, may, if necessary, be disregarded, and in such cases the court may grant any relief consistent with the case made by the plaintiff and embraced within the issues. R. S., sec. 3683.

The case made by the petition is, we think, a meritorious and equitable one throughout. During a period of twenty years the plaintiff, who was a girl, lived with the said McLaughlins, was obedient, dutiful, and affectionate, paying these parties all the attentions due from a child to parents, and which, as was observed in *Sutton v. Hayden, supra*, "money, with all its peculiar po-

tency, is powerless to purchase," and performed, in all that time, the labor of the household, and did the family sewing and gave them all her wages. Said James McLaughlin, after making a will in her favor, as to one-half of his property, revoked the same, as we have seen, by codicil, to avoid making her independent, and to secure a continuance of the relation with his wife after his death, which occurred in the year 1876. Some years thereafter said Catherine died, suddenly, in a spasm, intestate, and without providing for this plaintiff, or carrying out the said agreement, by which plaintiff was to acquire the property, at their death, and the whole property augmented, as alleged, in the sum of five thousand dollars by her own earnings, now goes, if her equitable claim on the property is not enforced, to defendants, who, it is alleged, were residents of St. Louis, visitors at the house of said Catherine, and were aware of the relations between plaintiff and said James and said Catherine McLaughlin, and of plaintiff's expectations, and thus acknowledged and acquiesced therein.

For the reasons indicated, the petition contains, we think, a good cause of action, and we, therefore, reverse the judgment and remand the cause for further proceedings in conformity hereto, in which Sherwood, Black, and Brace, JJ., concur; Norton, C. J., absent.