JOSEPHINE P. FUCHS, by Next Friend, Appellant, v. FREDERICK J. FUCHS et al., Appellants.

St. Louis Court of Appeals, February 2, 1892.

1. **Contract to Dispose of Property by Will: STATUTE OF FRAUDS.** An agreement to dispose of property by will in a particular way, if made upon a sufficient consideration, is valid and binding ; and, though the contract is oral, the part performance of it will take it out of the operation of the statute of frauds, when a refusal to complete it would work a fraud on the party in whose favor it is made.

Fuchs v. Fuchs.

2. ——: REMEDY. A decree for specific performance was not feasible in such a case because real estate which the owner had agreed thus to dispose of by will had passed into the hands of an innocent purchaser for value, and because the intended testatrix had, owing to the death of the intended devisee prior to her own, not received the support during the whole of her life which constituted the consideration for her contract. *Held,* that such a decree should be made as was equitable under all the circumstances, and, therefore, a portion of the proceeds of the realty which were still owing by such purchaser was, after the death of the intended testatrix, adjudged to belong to the heir of the intended devisee.

3. **Witnesses.** A person who is a competent witness at common law remains so under our statutes, they being designed to enlarge, and not to restrict, the competency of the witnesses.

*Appeal from the St. Louis County Circuit Court.*
HON. W. W. EDWARDS, Judge.

REVERSED AND REMANDED (*with directions*).

*John W. McElhinney,* for plaintiff.

*D. C. Taylor,* for defendants.

ROMBAUER, P. J.—One Frederick Fuchs died seized of seventy acres of land in St. Louis county, leaving a widow and six children surviving him, who were entitled to equal shares in said land. The defendants, Frederick J. and Jacob Fuchs, who are two of these children, bought, prior to 1873, the shares of three of the other children, so that they were entitled to five-sevenths of the land, the widow Johanna to one-seventh and Simon Fuchs, the plaintiff's father, to one-seventh. In 1873, these parties made a voluntary partition of the land by exchanging deeds, whereby the defendants, Frederick J. and Jacob Fuchs became seized in severalty of twenty-five acres each, and the widow Johanna and the plaintiff's father, Simon, to ten acres each. At the date of the partition the plaintiff's father was living with his mother in the mansion house, which was located on the ten acres deeded to her. There was no

house on the ten acres deeded to him. Simon Fuchs afterwards married, but continued to live with his mother, working the little farm of twenty acres belonging to himself and his mother, until the date of his death in January, 1887.

The present action is brought by the plaintiff, who is the only heir of Simon, for specific performance of following contract: She charges that, prior to the partition of these lands, her father and grandmother agreed that the former should support the latter during her lifetime; and that, in consideration thereof, she would convey to him by will, or otherwise, the ten acres allotted to her; that her father entered upon the possession of the ten acres in pursuance of this agreement, and made valuable improvements thereon, and continued to support his mother until the date of his death; that, after her father died, the defendants, Frederick J. and Jacob Fuchs, although aware of the agreement between her father and grandmother, caused their mother, by fraud and undue influence, to convey the ten acres to them for a nominal consideration, and that thereafter they conveyed them to the defendant Gillmann, who took the land with notice of the contract between her father and grandmother, paying therefor $300 in cash, and executing a note for $500, secured by deed of trust on the land, which note and security the defendants, Frederick J. and Jacob Fuchs still hold.

The petition prays that the contract between plaintiff's father and grandmother be specifically performed, that the deed of her grandmother to Frederick J. and Jacob Fuchs be set aside, and that the title to these ten acres be vested in the plaintiff as sole heir of her father, and for further relief, etc.

The defendants filed a joint answer denying the allegations of the petition. The court, after a full hearing, made a finding that the allegations in the petition were in the main true. On the question, whether or not the deed from Johanna to Frederick J.

and Jacob Fuchs was obtained by undue influence, the court made no finding. The court, however, did find that the contract between Johanna and her son Simon Fuchs was as claimed in plaintiff's petition, and that the defendants, Frederick J. and Jacob Fuchs, knew thereof, and hence that they acquired the title in fraud of the plaintiff's rights. The court further found that the defendant Gillmann was an innocent purchaser for value. The court also found that the plaintiff's father, in reliance upon the contract between himself and his mother, made valuable improvements on the ten acres owned by his mother, to the value of $250. The court thereupon decreed that the note and security given by Gillmann to the defendants, Frederick J. and Jacob Fuchs, be impounded until due, and that out of its proceeds $250 with interest be paid to the plaintiff.

From this decree both parties appeal, The plaintiff contends that the evidence fully supports the finding, and that upon that finding she was entitled to the entire note of $500 and to the mortgage securing the same, as standing in lieu of the interest in the land still held by Frederick J. and Jacob Fuchs. The defendants contend that the evidence fails to support the decree; that the evidence of any contract between Johanna and Simon Fuchs is of the very vaguest character, and not such as would support a decree for specific performance; that, even if such a contract had existed, the plaintiff's father never performed his part thereof; that the court's finding, that the defendants, Frederick J. and Jacob Fuchs, knew of any contract between the plaintiff's father and Johanna Fuchs, is not supported by the weight of the evidence, and that under the weight of the evidence the plaintiff is not entitled to any relief whatever.

The testimony in regard to a contract, such as stated in the petition, is not very definite, nor can it be, in view of the fact that both parties thereto are dead and that its terms have never been reduced to writing.

It was shown, however, by uncontradicted evidence that, shortly after the partition, Simon and his mother called upon a witness, and the mother had her will drawn by which she devised these ten acres to Simon, and that it was then stated in her presence that this was done in consideration of his supporting her during her lifetime, and was so stated in the will; that the mother made declarations to the effect, that the land was Simon's and no one should take it away from him, to a number of witnesses, and intimated to some that this was in consideration of his support of her, and that Simon, who subsequently married, did continue to live with his mother on these ten acres, making improvements thereon to the value of several hundred dollars, and leaving the ten acres deeded to him unimproved; that he paid on one occasion at least a debt for his mother, and that he continued to support his mother until the date of his death, a period of about thirteen years.

After Simon died, his widow continued to live on the premises with Simon's mother for about eight months, when she remarried. It was shown that, at the date of such remarriage, the widow of Simon and her second husband proposed to Simon's mother to take her with themselves to Carondelet and support her there, but that the old lady preferred to remain in the house where she had been living so long. It also appeared that, some time after Simon's death, his mother in company with his widow and the defendant, Jacob Fuchs, called upon a witness, and had him surrender the will with a view of having one drawn in favor of the plaintiff, who is the sole surviving child of Simon, but that instead of doing so the old lady made a deed in favor of the defendants, Frederick J. and Jacob Fuchs, conveying to them the premises for a consideration of $5, reserving to herself the possession thereof during her lifetime. This deed was made November 30, 1887, about two months after the

remarriage of Simon's widow. There was some evidence tending to show that part consideration of this deed was the support for life by Frederick J. and Jacob Fuchs, of their mother, the grantor, and that they did support her until her death, which occurred in January, 1889, about thirteen months after the execution of the deed to her sons. There was also some evidence that the two defendant sons paid the funeral expenses of their mother, and the expenses of her last illness. She left no property upon which a claim on part of Simon or his child could be charged, unless it can be charged upon the ten acres conveyed to her sons, or the proceeds thereof still in their possession.

While there is some conflict in the evidence, mainly on the question of notice to the two defendant sons, of the contract between Simon and his mother, there was sufficient evidence to justify the trial court in finding the facts as it did. As that court had opportunity to observe the conduct of the witnesses who gave the evidence, and we have no such advantage, we must, to a great extent, defer to its conclusions in solving conflicts in the evidence. We, therefore, conclude that the finding of facts by the trial court was supported by the weight of the evidence, and confine ourselves to applying the law to the facts thus found.

It is the settled law of this state that an agreement to dispose of property by will in a particular way, if made upon a sufficient consideration, is valid and binding, and that, although the contract be oral, the part performance of it will take it out of the operation of the statute of frauds, when a refusal to complete it would work a fraud on the other party. *Gupton v. Gupton*, 47 Mo. 37; *Sharkey v. McDermott*, 91 Mo. 647. The facts of this case are almost identical with those in *Gupton v. Gupton*, *supra*, where Judge BLISS upon a full review of the law and facts arrived at the following conclusion: "Some ground for equitable interference will be required, and in the case at

bar there is abundant ground, even if the contract could not be specifically enforced. *First.* It is a parol contract, which cannot be sued on at law, but which equity will enforce under the circumstances heretofore indicated. *Second.* Barnett has conveyed to Madison Gupton all his property, and a judgment for damages merely would be altogether useless. It must be made to fasten upon some property which can only be reached in equity, not by a creditor's bill, but as being subject to the plaintiff's claim by the terms of the contract, or he is wholly without remedy. *Third.* The case made by the petition is altogether and throughout equitable, and, having thus obtained jurisdiction, the court will give the plaintiffs any relief to which they are entitled.''

So in the case at bar, no decree for specific performance can be had, because the plaintiff's father never performed his entire contract, and because the land itself passed into the possession of a purchaser for value without notice. A judgment against the estate of the promisor would have been unavailing, because she left no estate, except this land which became chargeable in the hands of those who took with notice. Why then should the proceeds of the land not be thus chargeable in the possession of those, in whose possession the land itself would have been chargeable?

This is evidently the view of the law taken by the trial court as applicable to the facts found, but in granting relief the trial court did not go far enough. There was no evidence of the value of the support which the plaintiff's father, Simon, had given to his mother, but it may be said, as was said in *Sharkey v. McDermott, supra,* that, ''in this class of cases it is impossible to estimate, by any pecuniary standard, the value to the recipient of the services rendered, and such services are not designed or intended to be so measured. The contract is originally so created that the consideration which the party receives cannot be returned.'' There

was, however, a standard by which the comparative value given for the land by the plaintiff's father, and by the defendants, Frederick J. and Jacob Fuchs, could be measured with sufficient accuracy to determine the relative equitable claims of the two parties. The plaintiff's father supported his mother for thirteen years and the two defendants for thirteen months only. As support was in each instance the main consideration for the contract, it is evident that the defendants, Frederick and Jacob, have been more than repaid by the $300 of the purchase money paid by Gillmann, which they received, and that, upon a fair apportionment of the relative values, the plaintiff was at least entitled to the entire amount of $500, which could still be reached in this proceeding. This leaves out on the one hand the improvements made by plaintiff's father upon the land, and on the other the expenses of the last illness and funeral paid by the defendants, although the latter is not attempted to be supported as a consideration provided for by the contract.

The defendants' exception that the plaintiff's mother was not a competent witness is not well taken. She was neither a party to the record, nor to the contract, and it stands expressly admitted that she is not a party in interest. She would have been a competent witness at common law, and is, therefore, a competent witness under the statute which was designed to enlarge, and not to restrict, the competency of witnesses.

It results from the foregoing that the plaintiff's exceptions must be sustained, and those of the defendants overruled. The judgment will accordingly be reversed and the cause remanded to the trial court with directions to enter a decree in favor of plaintiff, vesting in her the possession of the $500 note executed by Gillmann for part of the purchase money, and the mortgage securing said note. The costs of the cross appeals shall be paid by the defendants, as well as all other costs in the case. So ordered. All the judges concur.