GRACE A. BRIGGS, APPELLEE, v. HENRY M. KEMP, APPELLANT.

FILED MARCH 30, 1918.   No. 19977.

1. Pleading: AMENDMENT. It is not error for the district court in furtherance of justice to allow plaintiff to amend his petition to conform to the facts proved on the trial. *Blondel v. Bolander*, 80 Neb. 531.

2. Evidence examined, and *held* sufficient to sustain the decree of the district court.

3. Appeal: AFFIRMANCE. A decree of the district court in a case tried to the court without a jury will not ordinarily be reversed for the admission of some incompetent evidence; the presumption being that only competent evidence was considered by the court in arriving at the judgment.

APPEAL from the district court for Colfax county: GEORGE H. THOMAS, JUDGE. *Affirmed.*

*George W. Wertz,* for appellant.

*Cain & Mapes, contra.*

HAMER, J.

This is an appeal from a decree of the district court for Colfax county for the specific performance of a conveyance of lots 1, 2, 3 and 4, in block 7, in Groat's addition to the city of Schuyler, Nebraska, to plaintiff.

The defendant Kemp has appealed. He contends that the trial court erred in allowing plaintiff to amend her petition to conform to the facts proved on the trial. His argument is that the amendment changes plaintiff's cause of action. An examination of the pleadings fails to sustain his contention. It has always been the rule of this court to allow an amendment in furtherance of justice to conform to the facts proved. *Blondel v. Bolander,* 80 Neb. 531. Therefore the court did not err in permitting the amendment.

It is next contended that the evidence was insufficient to sustain the findings and judgment. The record discloses that the plaintiff, Grace A. Briggs, was born at Hesperia, Michigan, on the 10th day of March, 1879. Her parents were Silas James and Medora James, husband and wife. Before the plaintiff was one year old her parents placed her in the home of William Case and his wife, Catherine, to board, her own mother being ill and unable to care for her. On June 24, 1880, her parents entered into a written contract with Case and his wife by which Grace was legally adopted. The deed of adoption was introduced in evidence and is in the record. On the face of this contract Case and his wife took plaintiff into their home as their own daughter and heir at law, and her real parents wholly relinquished her to her foster father and mother, who received her with the understanding that, having no children of their own, Grace, at their death, should inherit all of their property; and in a petition to the probate court of Montcalm county, Michigan, Catherine Case swore that Grace was her adopted daughter and only heir at law. The evidence further shows that Mr. and Mrs. Case told their neighbors and friends, among whom was Mrs. Blanche Kennedy, and her husband, who was a member of the Michigan state board of control, as late as 1892, that Grace was their heir and at their death should have all of their property. This was what plaintiff was led to believe, and these facts were well known to defendant Kemp.

The record further shows that the plaintiff fully performed her part as a daughter of Mr. and Mrs. Case. Meanwhile Case as a veteran of the civil war received a pension from the United States amounting to about $850, and invested the same in a home in Lakeside, Michigan, to which place they moved, taking plaintiff with them as their daughter. The title to their home in Lakeside was taken in the name of Mrs. Case, the wife of William, and plaintiff's foster mother. Plaintiff continued to live with her foster parents as their daughter, performing duties as a daughter, and nursed and cared for Mr. Case through his last illness until his death, which occurred on the 2d day of August, 1902. His widow, Catherine, and the plaintiff are his sole heirs at law. The plaintiff continued to make her home with her foster mother, and worked hard to help support her until after Mrs. Case married the defendant Kemp and went to live with him as his wife in Schuyler, Nebraska. The following evidence shows how well plaintiff performed her duties as a daughter. "Q. What did you do during that time? Tell the court what you did. A. When I was seven years old Mr. Case was taken very badly sick—a total invalid, with total paralysis all over him, so I had to wait on him like he was a baby seven months old, and I stayed at home and took care of him until I was pretty near thirteen, when he died. Then I—during the time he was sick, my mother did laundry work, and in the daytime— Q. Wait a minute. When you say mother, you mean Mrs. Kemp? A. Yes; Mrs. Case. I used to go all over Lakeview and get the washing and take it home, and my mother did the washing; we were poor; and then I took them back home again, and I worked very hard at every kind of work from the time I was seven years old until I was twelve. Mr. Case died in August, and I started to school in September, and the next February my mother fell down cellar, and she broke her right arm, and she was a total cripple with her right hand to her

death, and then when I was fifteen I went to Charles F. French and did their housework for three years, and every cent I earned I paid my mother and helped her to live, and then in 1898 she moved to Greenville, and I went to Belding and worked in the silk mills—Richards Silk Mills—for a year and a half, and all I earned over my living expenses I gave my mother for her living.''

The evidence shows that plaintiff married Mr. Briggs and is now his wife. Mrs. Case, when she came to Schuyler, sold her house in Lakeside and invested the proceeds in the lots in question in this case, taking title in her own name as Catherine Case. She died on the 12th day of July, 1912, leaving a will by which she gave all of her property to her husband, defendant Kemp, without making any provision for her foster daughter, the plaintiff. The defendant Kemp procured the will to be probated and claimed title to the lots in question to the exclusion and in violation of the plaintiff's rights under the adoption agreement. The evidence also shows that the defendant knew of plaintiff's rights and often wrote to her in terms of affection calling her his dear daughter and asking for her advice. Defendant, instead of according her her rights in the premises, filed a petition in the county court of Colfax county after the death of his wife alleging that Cora Osborne, Mary Leland and the Schuyler National Bank were the only persons except himself who were interested in the estate of the deceased wife. He also instituted a search in the state of Michigan for the articles of plaintiff's adoption, and told one Pierce, a lawyer at Belvidere in that state, that if he could find the record of the adoption it would mean $800 to him. The testimony in this case is too voluminous to be quoted at length, but we conclude as an independent finding that the evidence is amply sufficient to sustain the decree of the trial court. *Sharkey v. McDermott*, 91 Mo. 647; *Lacey v. Zeigler*, 98 Neb. 380; *Moline v. Carlson*, 92 Neb. 419; *Rine v. Rine*, 100 Neb. 225.

Finally, it is contended that the trial court erred in the admission of certain evidence, and for that reason the judgment should be reversed. The rule in this state is that, when a cause is tried to the court without a jury, it will be presumed that the court considered only competent evidence, and this assignment of error does not require a reversal of the decree. It must be observed that all of the other defendants defaulted and failed to claim any interest in the property in question.

After a careful review of the record we conclude that the judgment of the district court was right, and it is therefore

AFFIRMED.

SEDGWICK, J., not sitting.