# CASES DETERMINED

# SUPREME COURT

OF THE

# STATE OF MISSOURI

AT THE

## OCTOBER TERM, 1902.

---

(*Continued from Volume 169.*)

## THE STATE v. EDWARD DILLER, Appellant.

Division Two, October 27, 1902.

1. **Coroner's Transcript:** IDENTIFICATION. Where counsel for defendant announces that the paper from which the State's attorney is reading is "the coroner's transcript" and the witness himself testifies that the signature to the paper from which he reads is his, the paper is sufficiently identified to be used in rebuttal, and such evidence shows that it is recognized by both court and counsel as the coroner's transcript of the witness's testimony.

2. **Instruction for Manslaughter:** LAWFUL PROVOCATION: ACCIDENT OR MURDER. Deceased had threatened defendant and told him the next time he met him he would "blow his damn head off." He was looking for him a few days thereafter and this fact was made known to defendant. Deceased returned to the place at the time he was told defendant could be found there, and approached him with his right hand in his trousers pocket. Defendant half arose from his chair, drew his pistol, and made a stroke at deceased with his left hand, in which was his pistol, intending, as he said, to strike deceased and thus protect himself from assault by deceased, but the pistol went off accidentally, as defendant claimed, and de-

Vol 170 mo—1                                    (1)

State v. Diller.

ceased was shot and killed. *Held*, that there was no room in the case for an instruction on manslaughter, for the reason that there was no lawful provocation for the assault, the case being either one of murder in the second degree or one of self-defense.

Appeal from St. Louis City Circuit Court.—*Hon. Franklin Ferris*, Judge.

AFFIRMED.

*Charles P. Johnson* for appellant.

(1) It was the duty of the court to admit all the evidence concerning the acts, conduct and speech of both Cunningham and Toomey which would enable the jury to learn what the true feeling of Toomey was toward Diller; and the court should have instructed the jury as to the value of such testimony in determining the issues submitted to them. (2) Now, as to the admission of the paper, in the State's rebuttal testimony, which purported to be the record of the coroner's inquest and the evidence adduced there: One of the principal witnesses for the defense, Robert J. Reel, was repeatedly questioned as to whether he had not testified thus and so at the coroner's inquest, and Reel had repeatedly answered that he did not remember what he had testified to at the coroner's inquest, and several times answered substantially as follows: "If it is down there that way, I suppose I did testify that way." The defense objected to the questions and excepted, but the point now pressed upon the court is this: Was it not error for the court to permit the introduction in evidence of a paper purporting to be the record of the coroner's inquest, without that paper being identified in any way? (3) It was the duty of the court to have instructed for manslaughter. The defense properly excepted at the time to the failure of the court to fully and properly instruct the jury. When a man intends to shoot another with a pistol he points it at his victim, but he does not "strike at" him just as he is about to fire. The testimony of Bassler, Reel and Russell corroborates

defendant's claim that he did not intend to shoot. It will not do to say this is a case of perfect self-defense or murder. The jury may have believed that Toomey was about to attack Diller and that Diller acted in self-defense, but used more force than was necessary if he intentionally fired the pistol. The jury may have believed Diller's claim that he did not intentionally fire the shot, but also believed him to be criminally negligent in trying to strike an adversary with a loaded pistol.

*Edward C. Crow,* Attorney-General, and *Sam B. Jeffries,* Assistant Attorney-General, for the State.

(1) Intentional killing is presumed to be murder in second degree. The jury was so instructed by the court in instruction 2. State v. Holme, 54 Mo. 153; State v. Underwood, 57 Mo. 40; State v. Eaton, 75 Mo. 586; State v. McKenzie, 102 Mo. 620. To raise a presumption of murder in second degree, the homicide must have been intentional. The jury was so instructed. State v. Phelps, 76 Mo. 319; State v. Curtis, 70 Mo. 594; State v. Bohanon, 76 Mo. 562. The instruction on the question of an intentional killing being presumed to be murder in the second degree, is as follows: "You are further instructed that if you find from the evidence that the defendant intentionally killed the said Toomey by shooting him with a pistol, at the time and place mentioned in the foregoing instruction, then the law presumes such killing was murder in the second degree in the absence of proof to the contrary, and it devolves upon the defendant to meet or repel such presumption, unless such presumption is met or repelled by the evidence introduced on behalf of the State." This instruction fully conforms to the rulings of this court on the question. State v. Jones, 78 Mo. 278; State v. Duncan, 116 Mo. 288; State v. Eaton, 75 Mo. 586. (2) No error can be found in the court's instruction on the law of self-defense or other propositions instructed upon. The instructions were full and complete, covering every

point raised by the evidence. It is true, defendant excepted to the action of the court in failing to instruct "upon all the law of the case," but nowhere does he call attention to the point wherein such refusal was indulged in. This was a frivolous objection, and will not be seriously considered by defendant himself.

BURGESS, J.—At the April term, 1901, of the circuit court of the city of St. Louis, the defendant was convicted of murder in the second degree, and his punishment fixed at ten years' imprisonment in the penitentiary for having theretofore, at said city, shot and killed with a pistol one Edward Toomey.

Defendant appeals.

It appears from the record that on January 9, 1898, while in the saloon of one Smith in the city of St. Louis, Tony Furst and one Cunningham, made a wager as to which could throw the other down, and placed the wager in the hands of defendant Diller, as stakeholder, who decided the bet in favor of Furst, and turned the money over to him. Cunningham was dissatisfied with the result and demanded his money back.

On the following day, Cunningham and Edward Toomey the deceased went to the place where Tony Furst worked and demanded the money, and said if it was not returned it would be taken out of Diller's hide. The following Sunday afternoon Toomey and Cunningham met Diller on the street; Diller's half-brother, C. G. Schaefer, was with him at the time. Diller and Schaefer were pursued by Toomey and Cunningham, until Diller and Schaefer ran into a saloon kept by a man named Asman and concealed themselves behind the icebox, having locked the door of the saloon to prevent Toomey and Cunningham from following them in. Toomey then threatened Diller and told him the next time he met him he would "blow his damn head off."

On the following Monday morning, Toomey went to the saloon of Mr. Veste, at Sixteenth and Franklin avenue, where Diller had formerly worked as a bartender, and where he usually stopped when in the city.

Toomey asked Veste where Diller could be found, and he was told that he usually visited that saloon every day. Again, at noon, Toomey returned and asked for Diller, and inquired of Veste as to when was the best time to find Diller. Veste told Toomey that Diller was in the habit of visiting the saloon every morning and reading the newspaper, especially the advertisements, in order to try and find work. Toomey departed, and his manner at the time made such an impression upon Veste that he warned Diller and told him to look out for trouble. Toomey had never visited this saloon except at the time described, so far as Veste knew.

Tuesday morning about nine o'clock Diller was in Veste's saloon, reading a newspaper. At that time there were present William Russell, Robert Reel, a man named Dowd, Gottlieb Bassler and Veste. After Diller had been there twenty or thirty minutes, Toomey entered the saloon, approached the bar, and seeing Diller, approached him, with his right hand in his trousers pocket. Diller half arose from his chair, drew his pistol, and made a stroke at Toomey with his left hand, in which the pistol was held, intending, as he said, to strike Toomey, and thus protect himself from assault by Toomey, but the pistol went off accidentally, as Diller claims, and Toomey was shot and killed. Toomey died shortly after receiving the wound, never having regained consciousness. Diller went to Illinois and worked on a farm until arrested and brought back for trial at the April term, 1901.

The point is made that the court erred in not allowing the defendant to bring out in evidence before the jury the full details of the quarrel between Cunningham and Diller over the wrestling wager and the fact that Toomey was a friend of Cunningham's and took up the quarrel. The record, however, discloses that all of the material facts, even to their detail with respect to said quarrel between Cunningham and Diller over the wrestling wager, were disclosed, as well also as the fact that Toomey was the friend of Cunningham, and that defendant has no ground to complain on that score.

It is claimed that the court erred in allowing counsel for the State to ask witness Robert Reel whether he had not testified thus and so at the coroner's inquest, and then, in rebuttal, in permitting him to introduce in evidence an unidentified paper as being the record of the coroner's inquest. The record, however, sufficiently shows that the record from which counsel for the State read was the "coroner's transcript," and that it was so recognized by both court and counsel. Indeed, counsel for defendant stated to the court during the examination of this witness, that he, counsel for the State, "is reading from the coroner's transcript." Moreover, the witness himself testified that the signature to the evidence from which he read was his. Certainly nothing more could have been desired in the way of the identification of the record as being that of the coroner's inquest.

It is contended that the court erred in not instructing the jury upon manslaughter, but this position is untenable, for the reason there was no lawful provocation for the assault, which was necessary in order to reduce the killing from murder to manslaughter. It was either a case of murder in the second degree or of self-defense, and it was upon this theory the case was correctly tried.

The instructions are in accordance with the uniform rulings of this court, and free from objection.

The conviction was well warranted by the evidence, and, in our opinion the judgment should be affirmed. It is so ordered.

All concur.