HARRIETT A. MERRILL et al. v. ELLIOTT W. THOMPSON et al., Appellants.

Division One, December 6, 1913.

1. EVIDENCE: Credibility: Number of Witnesses: Parol Agreement to Convey Land. The weight and convincing character of testimony does not depend so much upon the number of witnesses in a cause, as upon the intelligence, honesty and veracity of those who do testify. It cannot be held as a rule of law that a parol agreement to convey land cannot be established by the uncorroborated testimony of one witness. But in this case the one witness was corroborated.

2. PAROL CONTRACT TO DEVISE LAND: Sufficient Evidence. In 1869 Nathan Thompson owned forty acres of land on which he resided with his wife, five sons and two daughters. By 1882 the sons had married and left home. By 1884 or 1885 he and his wife had both greatly declined in health, and were on that account unable to make a living for themselves, the rent of the farm being insufficient for the purpose. One of the daughters, Sophia, then a widow, was temporarily staying at home, assisting in the household duties; the other, the plaintiff, had for several years taught school, but lived at home, and assisted in the support of the family out of her salary. One of the sons testified that his father made a parol contract with the two daughters, by which he agreed that, if they would remain at home, take care of and support him and their mother as long as they lived, pay his debts, keep up the home, and furnish them with support, medicines and physicians, he would will them the farm; Sophia was to stay with them all the time and do the household work; plaintiff was to reside at home, also, but to teach school, and use her salary and the rents or profits of the farm to maintain the household, furnish him and his wife the means for their maintenance, pay the taxes and keep the place in repair. They religiously kept the agreement until the death of the father in 1893 and of the mother in 1899. About 1886 the father made his will by which he devised the farm worth then $1400 or $1500 to the two daughters subject to a life estate in favor of his wife, but he died intestate as to his other children, because the will failed, by error of the scrivener, to mention their names. Thereafter all the pretermitted heirs, except defendant, by quitclaim deeds, conveyed their interests to the daughters. Defendant brought suit for partition about 1900, which was dismissed because of his inability to give bond for costs, the motion alleging he had no interest in the land. Thereafter Sophia conveyed to plaintiff, and she constructed a new house on the land and made other improvements at a cost of $2500, and has since been in exclusive possession, and brought this suit to determine the title. *Held* that, tested even by the rigid rule laid down in Walker v. Bohannan, 243 Mo. l. c. 135, the proof establishes a definite parol contract to convey the land to the two daughters, and their complete performance thereof is referable to it.

Appeal from Livingston Circuit Court.—*Hon. Arch B. Davis,* Judge.


AFFIRMED.

*John H. Taylor* and *Paul D. Kitt* for appellants.

(1)    This being an equity case, the court is not bound by the finding of the trial court, but will examine and weigh the evidence to ascertain whether it is sufficient to justify the decree.    Collins v. Harrell, 219 Mo. 279; Lacks v. Bank, 204 Mo. 455; Plummer v. Knight, 156 Mo. App. 333; Russell v. Sharp, 192 Mo. 291; Waddington v. Lane, 202 Mo. 415.    (2)    The trial court erred in finding that there was an oral contract between the deceased Nathan Thompson and his two daughters, the plaintiff and Sophia Fulkerson, by which the said Nathan agreed to give or leave the land in question to such daughters, because:  (a) The alleged oral contract was not clear, explicit and definite.    (b)    If the contract was proved, it was not the contract pleaded.    (c) The contract was attempted to be established by conversations too ancient and too loose and casual.    (d) The proof was not such as to leave no reasonable doubt that the contract as pleaded was in fact made and that full performance has been had.    (e)    The work relied upon as constituting performance is not referable solely to the alleged contract sought to be enforced, but might be referable to some other cause.  (f) The rent received by plaintiff will more than offset any sums paid out by her in the support, maintenance and care of her father and mother; so no fraud will be worked on plaintiff by refusing to enforce the alleged contract. (g)    The proof, at best, shows a mere disposition or intention to devise by will as a reward for services already performed and money already advanced, and does not show a contract to devise made before the acts of performance relied upon were had.    Walker v. Bohannan, 243 Mo. 119; Forrister v. Sullivan, 231 Mo. 345; Collins v. Harrell, 219 Mo. 279; Wales v. Holden, 209 Mo. 552; Kirk v. Middlebrook, 201 Mo. 245; Oliver v. Johnson, 238 Mo. 376; Russell v. Sharp, 192 Mo. 270; Berg v. Moreau, 199 Mo. 433; Kinney v. Murray, 170 Mo. 700; Rosenwald v. Middlebrook, 188 Mo. 58;

Emmel v. Hays, 102 Mo. 186; Rogers v. Wolfe, 104 Mo. 9. (3) The making of the will by Nathan Thompson, plaintiff's father, is no evidence of a contract. (4) The evidence showing payment of debts of Nathan Thompson by the plaintiff was not relevant or material. The contract pleaded did not count on payment of debts as a consideration for the alleged provision by Nathan Thompson. The court erred in hearing incompetent evidence subject to objection. Russell v. Sharp, 192 Mo. 270; Asbury v. Hicklin, 181 Mo. 670. (5) The plaintiff did not acquire title by adverse possession. The court found she did not and the evidence sustained the finding, from which she has not appealed. Hendrick v. Musgrove, 183 Mo. 300; Golden v. Tyer, 180 Mo. 201; Benoist v. Rothschild, 145 Mo. 408; Warfield v. Lindell, 30 Mo. 272.

*Lewis A. Chapman* for respondents.

(1) In equity cases the appellant court will pass upon the facts together with all questions involved, though even in an equity case, where the evidence is evenly balanced, deference is paid to the finding of the chancellor. So in this class of cases, it is held that the credibility of witnesses can best be determined by the chancellor, who has the witness before him, and the Supreme Court will defer somewhat to finding of the chancellor; and when the evidence is conflicting, the Supreme Court will defer to the finding of the trial judge in equity cases. Equity cases are tried *de novo,* and the evidence reviewed, but the appellate court looks into the whole record, and if the judgment is right and founded upon competent proof, it will be affirmed. Benne v. Schnecka, 100 Mo. 250; Cox v. Cox, 91 Mo. 71; Erskine v. Lowenstein, 82 Mo. 301; Plummer v. Knight, 156 Mo. App. 333; Carpenter v. Roth, 192 Mo. 659; Williams v. Husky, 192 Mo. 549. (2) The finding and judgment was correct. The evidence that there was an oral contract made by Nathan Thompson

with the plaintiff, Harriett, and her sister, Sophia, was clear and abundant. There really was no conflict on this point. The testimony of Fountain K. Thompson was clear. His testimony was that his father talked to him a number of times and then made the agreement with these daughters. The father had no other children with him, and these daughters were under no more obligations to support, nurse and attend their parents than the other children, who had left home and they were not obliged to stay. The evidence shows that the father agreed that if they would stay with him and care for him and their mother, as long as they lived and maintain a home for them on this land during their lives he would will them the land. They were to keep up the property, pay all the debts against it, pay all taxes and make all repairs. In other words this plaintiff, with her sister, were to support these old people and keep a home on that place for them, and stay with them and care for them, and furnish whatever money was necessary. It was understood that the plaintiff, Harriett, could not be with them all the time, as she had to make the money necessary to support them. These old people were in poor health and not able to work, and they wanted their daughters to care for them, because these daughters would give them that care and attention during the remainder of their days, such as money cannot buy. The only property was this forty acres of land, partially encumbered, worth at the time this contract was made about $1200 to $1400. Certain kinds of services of a personal nature have been recognized by a clear majority of the American cases as a sufficient act of part performance, unaided by possession or other act on plaintiff's part where the services rendered are of such a peculiar character that it is impossible to measure their value by any pecuniary standard, and where it is evident that the parties did not intend to measure them by any such standard, it is impossible adequately to compensate the

party performing the services except by a decree of specific performance. There are some services that are incapable of valuation in money. As to these, the law permits individuals to make their own contracts. Sutton v. Hayden, 62 Mo. 114; Hiatt v. Williams, 72 Mo. 214; Gupton v. Gupton, 47 Mo. 37; Healey v. Simpson, 113 Mo. 346; Hall v. Harris, 145 Mo. 614; Hoch v. Habel, 32 Mo. App. 103; Sharkey v. McDermott, 91 Mo. 647; Fuchs v. Fuchs, 48 Mo. App. 18; Carney v. Carney, 95 Mo. 353; Berg v. Moreau, 199 Mo. 416; Nowack v. Berger, 133 Mo. 24; Russell v. Sharp, 192 Mo. 270. (3) It is competent for a person to make a valid and binding agreement to make a particular disposition of his property by last will and testament. Faxton v. Faxton, 28 Mich. 159; Sword v. Keith, 31 Mich. 247; Demoss v. Robinson, 46 Mich. 62; Meundy v. Foster, 31 Mich. 313; Johnson v. Hubbell, 10 N. J. Eq. 332; Van Dyne v. Vreeland, 11 N. J. Eq. 370; Carmichael v. Carmichael, 16 Am. St. 528; Bird v. Pope, 73 Mich. 483; Davidson v. Davidson, 13 N. J. Eq. 246. (4) The point is made that the will of Nathan Thompson is no evidence of a contract. It is true that the will, while it devised this property to the plaintiff and her sister, Sophia, did not mention the defendant, Elliott W. Thompson. The will as a conveyance of the property, so far as Elliott W. Thompson was concerned was a nullity. It was a mere attempt to carry out the agreement. The will was merely introduced in evidence to support the contract, and it was certainly very strong evidence to show the intent of the father, who doubtless supposed it was sufficient to accomplish his purpose. That the attempt to make a good will which failed was the fault of the scrivener. The attempt to make a good will, which failed, certainly did not place the daughters in a worse position than they were in before.

WOODSON, P. J.—This was a bill in equity instituted in the circuit court of Livingston county, by the

plaintiffs against the defendants, to quiet title, but·in reality, to specifically enforce an oral contract alleged to have been entered into by and between Harriett A. Merrill, *nee* Thompson, and her sister Sophia, with Nathan Thompson, their father, whereby he agreed to convey to them a certain forty acres of land situated in said county, and particularly described in the bill, in consideration that the former agreed to live with, care for, support and maintain him and his wife, their mother, during their natural lives; Harriett, alleging and claiming that she, prior to the institution of the suit, purchased the interest of her sister Sophia, and that she intermarried with her coplaintiff, William T. Merrill.

The pleadings are in no manner assailed, and we will therefore put them aside.

A trial was had and the court found the issues as to the contract (title also having been alleged to have been acquired by the Statute of Limitation) in favor of the plaintiffs (there being no finding either way as to the claim of title by adverse possession), and in due time and in proper manner defendant duly appealed the cause to this court.

The evidence as usual in such cases, is quite voluminous, which we have carefully read, and that for the plaintiff tended to prove the following facts:

That sometime in the year 1869, Nathan Thompson acquired title to the land in controversy, moved thereon and there resided until his death. His family consisted of himself, wife and eight children. One, Dora, died without marrying. Prior to 1882, all of the other children married and left home, except the two daughters, Harriett and Sophia, who were living with their parents. At that date, both of them were past the age of minority, and the former had been teaching school for a number of years, in the neighborhood, but resided with her parents. For some two or three years prior to this time, the father and mother depended

largely upon these daughters for support. Harriett, when not teaching, resided with her father, and assisted in doing the household work, and assisted her sister Sophia,who devoted all of her time to the house and to her parents.

At and prior to that date, the father's health had failed and he was able to do scarcely any labor. Likewise, the mother was an invalid and needed care and attention. That it was common knowledge to the members of the family and to the community, that if left alone, they would not be able to make a living. That the rent of the farm would not be sufficient to support and maintain them.

For years Nathan Thompson had been more or less in debt, some of which was secured by the land.

I think the record shows practically without contradiction, that at this time the condition of Nathan Thompson and his wife was such that they needed constant care and attention, and that they must depend upon some one for care and maintenance.

They had no means, practically, except this forty acres of land, and were unable to earn a dollar, both having been in poor health for years, and were growing worse all the time. He was then sixty-five and she was sixty-one years of age.

It was under those conditions that in 1883 or 1884, not later than 1886, the father is alleged to have made and entered into the contract with his two daughters, which is the subject of this litigation.

The evidence tended to show that he agreed with them, if they would take care of and support him and their mother, as long as they lived, stay with and look after them and provide them a home on this tract of land so long as they lived, pay their debts and keep the place in repair, that he would will the land to them when he died.

That Sophia was to stay with them in the future and care for them and do the household work, as she had in the past, and that Harriett was to continue teaching and reside with them and assist in the household work and in caring for them while there.

That she was to furnish the necessary means by which the house and premises were to be kept up, also the money necessary for the care and support of the father and mother, as well as for all medicines and medical attention as might be necessary. That she should procure the means for those purposes from the income, rents and profits realized from the forty acres of land and from her salary as teacher.

That they agreed to all that and faithfully carried out the agreement. That they took charge of the place and maintained, cared-for and supported their father and mother; also provided them with all necessary medicines and medical attention as long as they lived.

The former died in November, 1893, and the latter in February, 1899, he being about seventy-five and she about seventy-seven when they respectively died.

That Harriett paid all of her father's debts, individual as well as those against the farm. She made all necessary improvements, kept the place in good repair and paid all the taxes during all of those years and after the death of her parents she paid all the funeral expenses and had suitable monuments erected at their graves.

That at the time this agreement was made, said forty acres of land was worth from $1200 to $1400.

The debts of the father amounted to several hundred dollars, the exact amount not shown, which were all paid by Harriett. She had also furnished her father considerable sums of money prior to making this agreement with him, in order to help him make a living.

That in 1886, in order to carry out his part of the agreement, her father made and published a will by

which he devised all of said land to his daughters Harriett and Sophia, subject to a life estate to the mother.

Fountain K. Thompson, a son, was made executor of the will, which after the death of Nathan Thompson, was duly probated in the probate court of Livingston county, on March 7, 1894.

After its probation and after the death of the mother in February, 1899, it was discovered that the will was defective, in that, through an error of the scrivener, it failed to name the other children or heirs of the testator. Upon the discovery of this defect, Harriett and Sophia undertook to correct the defect by getting quitclaim deeds from all of the children of Nathan Thompson, their father, conveying their interest in this land to them, Harriett and Sophia. That all the children except the defendant Elliott W. Thompson, in compliance with their request, without reward or compensation, executed and delivered such quitclaim deeds to them.

That on August 3, 1899, this defendant brought a partition suit against all the children and heirs of Nathan Thompson, including Harriett and Sophia, to partition this land. This suit was returnable to the September term, 1899, of the circuit court.

The plaintiff here, the defendant there, filed a motion requiring the plaintiff to give security for the costs, for the reason that he had no interest in the property and was insolvent. The motion was sustained and defendant having failed to give security for costs, as ordered by the court, the cause was dismissed.

That after the death of the mother, Harriett and Sophia continued in the exclusive possession of said property, claiming title thereto against everyone; renting the same and receiving the rents thereof; also made valuable improvements thereon and paid the taxes thereon up to February 15, 1904, when Sophia conveyed her interest in said lands to Harriett; and from

that date to the date of the trial, she had the sole, exclusive and adverse possession thereof, claiming title against the world.

That she continued to rent the land and receive the rents thereof. She constructed thereon a new house and made other improvements which cost her $2500. The defendant at all times knew of all these facts but made no demands for his alleged interest therein, or protests arising out of the same.

There is but little difference between the foregoing summary of the evidence and that prepared by counsel for appellant; they differ in degree only.

With no design to criticise counsel for appellant, yet no disinterested, unbiased mind can read this record and reach any conclusion except that in the statement of the case they have minimized some of the important facts thereof; otherwise, their statement is well enough, which I will here copy, and thereby greatly shorten the statement from what it would be, should I attempt to state even the substance of the evidence.

Since counsel for both parties have seen proper to present this case upon the ultimate facts which the evidence tends to prove we feel justified in disposing of the case upon that theory, without going into and setting out the details of the voluminous evidence.

Said statement of counsel for appellant omitting formal and undisputed matters is as follows:

"About the year 1876 the family of Nathan Thompson then living with him on said farm consisted of himself and wife and two daughters, plaintiff and Sophia B. Fulkerson. All his other children had theretofore married and left home.

"The daughter Sophia had been married but prior to 1876, had separated from her husband and returned to the home of her father and mother, where she lived during her father's life and up to the time of her mother's death in 1899. The plaintiff never left home,

and the evidence is she had made her home with her parents and was making her home with them during all the time the parents lived on this farm.

"It is undisputed that both the daughters, plaintiff and Sophia B. Fulkerson, had made their home with their parents for years prior to the date of the alleged contract between the father and the two daughters, and during all that time had looked after and cared for their parents and assisted in performing the farm and household duties. It is also uncontroverted that the daughter Sophia had during this time stayed at home, attended to such duties as she could around the farm and looked after and cared for her parents; while the plaintiff had been a school teacher for a number of years prior to the date of the alleged contract and had during that period borne more or less the expenses of the family, of which she was a member, as well as paying some of the taxes, some of the interest on debts her father owed, and otherwise contributing to the family support.

"After the date of the alleged contract and during the father's life and up to the mother's death, both of these girls continued to perform the same character of acts and do the same character of work they had done before. The daughter Sophia continued to live at home, look after the household duties and do such work as she could about the farm, caring for and assisting her father and mother, the same as she had done prior to said alleged date. The daughter Harriett, the plaintiff, continued to make her home with her parents, bearing more or less of the family expenses, paying some of the taxes, some of the interest on her father's debts, and otherwise contributing to the general family fund, the same as she had done previous to the alleged making of the contract.

"Thus it is seen that the affairs of this family followed the same course without interruption for years before as well as after the time of the alleged contract.

In other words, the record shows no change in the situation, duties, acts or work of these two girls as a result of such alleged contract. But on the other hand, their situation remained unchanged; they performed the same acts and duties and did the same work as they had done before.

"There seems to have been no separate account kept of the amount spent by the plaintiff over and above the amount realized from the farm. Nor is the record clear that the income from the farm fell short, to any great extent, of maintaining the family. If it did, it is not stated how much. But it is clear they all lived together, each contributing in his own way to the maintenance of the family.

"The contract alleged and set forth in the plaintiff's petition as having been made between the father and the two daughters, for which specific performance was asked and decreed, is as follows:

"That on said —— day of December, 1886, the said Nathan Thompson and the plaintiff, Harriett A. Merrill, then Harriett A. Thompson, and the said Sophia B. Fulkerson, made an agreement by which the plaintiff, Harriett, and her said sister, Sophia B. Fulkerson, were to become the owners of the said land in fee simple, in consideration that they would take possession of said land, take care of and support and maintain their father and mother in sickness and health, and see that they had food, shelter, clothing, nursing, medical attention, and all necessaries; and the said plaintiff and her sister, Sophia B. Fulkerson, should live on the place with their father and mother and give them the benefit of their society and the comfort of their presence and help as long as their father and mother should live, and would farm said land and improve the same and maintain a home for their father and mother with them as long as their father and mother should live, and should see that their father and mother, when deceased, should receive proper burial and their funeral ex-

penses paid. That the said Nathan Thompson, their · father, was to convey them said land so as to make them owners thereof in fee simple. . . .

"While the plaintiff procured deeds from the other children of the deceased, except the defendant, Elliott W. Thompson (they making deeds voluntarily), for their interest in the farm, she made no claim to any of them that she was the owner of the land by reason of any contract. So far as the record shows, plaintiff's only claim to this land was based entirely on the intention of the father expressed by his will.

"Her father made a will by which he devised the farm in question to his wife for life, the remainder to the plaintiff and her sister Sophia. The will did not mention the other children of the testator. So, as to such other children, the defendant being one, the father died intestate. . . .

"Since the death of the father and mother the farm has been rented and the rent has been paid to plaintiff. As nearly as can be told from the record, there has been collected and paid to her at least one thousand dollars in rent and, as well as can be gleaned from the evidence, that amount will more than cover all the plaintiff has paid out of her own funds toward the performance of the alleged contract. . . .

"Appellant contends: That the evidence does not prove the contract as pleaded, does not show any contract was ever had, and that the finding was for the wrong party and should be reversed."

The following are the errors assigned by counsel for appellant:

"The trial court erred in finding that there was an oral contract between the deceased Nathan Thompson and his two daughters, the plaintiff and Sophia B. Fulkerson, by which the said Nathan agreed to give or leave the land in question to such daughters, because:

"(1) The alleged oral contract was not clear, explicit and definite.

"(2)    If the contract was proved, it was not the contract pleaded.

"(3)    The contract was attempted to be established by conversations too ancient and too loose and casual.

"(4)    The proof was not such as to leave no reasonable doubt that the contract as pleaded was in fact made and that full performance has been had.

"(5)    The work relied upon as constituting performance is not referable solely to the alleged contract sought to be enforced, but might be referable to some other cause.

"(6)    The rent received by plaintiff will more than offset any sums paid out by her in the support, maintenance and care of her father and mother; so no fraud will be worked on plaintiff by refusing to enforce the alleged contract.

"(7)    The proof, at best, shows a mere disposition or intention to devise by will as a reward for services already performed and money already advanced, and does not show a contract to devise made before the acts of performance relied upon were had."

I.    By reading this assignment of errors, it will be seen by comparing it with the general rule announced by this court, in the case of Walker v. Bohannan, 243 Mo. 119, l. c. 135, regarding the requirements of the allegations and proof in such cases, that counsel for appellant have predicated their assignment upon that rule, simply negativing the requirements stated therein.

Before considering this assignment of errors we will dispose of a general objection urged by counsel against the correctness of the decree, and that is, that "the proof to sustain the alleged contract is based solely upon the evidence of Fountain K. Thompson, a brother of the plaintiff," and, therefore, the evidence is insufficient to sustain the decree.

Parol Contract: Proof by One Witness.

If we correctly understand this contention it challenges the sufficiency of the strength of the testimony of any one witness to support a judgment or decree in a case of this character regardless of his intelligence, character and standing in the community for honesty, truth and veracity.

Even if this insistence was based upon undisputed facts (which it is not, for he is strongly corroborated by almost every physical and undisputed fact in the case, which facts are many, as will be presently noted), we would be unable to lend our concurrence thereto, for the simple reason that the weight and convincing character of testimony does not depend so much upon the number of witnesses who testify in a cause, but more upon the intelligence, honesty and veracity of those who give evidence in a cause.

This rule has been so long and so firmly established in our system of jurisprudence, it would be more than a useless waste of time and energy to cite authority in support thereof.

We, therefore, rule this insistence against appellant.

II.   We now approach the main proposition involved in this case for determination, and that is, was the evidence introduced sufficient to support the findings and the decree herein made and rendered in favor of the respondent, if tested by the following rule announced by this court in the case of Walker v. Bohannan, supra, viz.?

**Parol Contract to Devise Land: Sufficiency of Proof.** "With the acquired experience the courts had gained before the passage of the original statutes of frauds and perjuries, they were slow to engraft thereon any exception to the iron-clad rule of the statute.  Later, however, it became apparent to courts of conscience that frauds were being perpetrated under the strict letter of the statute.

"To obviate these frauds the exceptions to the statute here invoked were adopted by courts of equity, but not without well-defined rules of procedure—rules, which like the statute itself, would be a safeguard as against the perpetration of frauds.

"The rules cover many phases, i. e.: (1) The alleged oral contract must be clear, explicit and definite; (2) it must be proven as pleaded; (3) such contract cannot be established by conversations either too ancient on the one hand, or too loose or casual upon the other; (4) the alleged oral contract must itself be fair and not unconscionable; (5) the proof of the contract as pleaded must be such as to leave no reasonable doubt in the mind of the chancellor that the contract as alleged was in fact made and that the full performance, so far as lies in the hands of the parties to perform, has been had; (6) the work constituting performance must be such as is referable solely to the contract sought to be enforced, and not such as might be reasonably referable to some other and different contract; (7) the contract must be one based upon an adequate and legal consideration so that its performance upon the one hand but not upon the other would bespeak an unconscionable advantage and wrong, demanding in good conscience relief in equity; and (8) proof of mere disposition to devise by will or convey by deed by way of gift, or as a reward for services, is not sufficient, but there must be shown a real contract to devise by will or convey by deed, made before the acts of performance relied upon were had."

Speaking of this rule generally, I wish to state that I have never indorsed it in the full sense in which it is there stated, but my views regarding it are fully stated in my dissenting opinion, filed in the case of Collins v. Harrell, 219 Mo. 279, l. c. 311 to 343.

Since, however, the facts of this case are practically undisputed, we will have no necessity to attack the stringency and rigidity of that rule.

The undisputed facts are, that Nathan Thompson, about the year 1869, owned a small farm of forty acres of land situate in Livingston county, upon which he resided with his family, composed of himself, wife and eight children, five boys and three daughters, one of whom died without issue.

Prior to 1882 all the sons had married and moved away, leaving the father and mother and the two daughters at home. In the meantime both the father and mother had greatly declined in health, and were, on that account, unable to make a living, and the rent of the farm was insufficient for that purpose.

Under those circumstances it became apparent to all that the father and mother would have to make some arrangement for their support and maintenance during their declining years. The sons were all married and had departed the parental roof. Sophia had been married and divorced, but was staying temporarily at the home of her father and mother, assisting in the performance of the household duties; and Harriett was and had, for several years, been teaching school, living, however, with the father and mother, and assisted in doing the work about the house of nights and mornings, and had been contributing to the support of the family out of her salary as teacher.

While Harriett and Sophia were not competent witnesses to testify as to the contract, yet one of their brothers, Fountain K. Thompson, and a brother of the appellant, testified, in substance, that some time between 1884 and 1886, Nathan Thompson, recognizing his enfeebled and helpless condition, made a contract with his two daughters, by which he agreed that if they would take care of and support him and their mother as long as they lived, stay with and look after them and provide them with a home on said farm during said time, pay his debts, keep up the place and furnish them with medicines and medical attentions, he would will them the land in question. Also that Sophia was to

stay with them all the time and devote her time and attention to them, when necessary, and look after the household duties. Harriett, likewise, was to reside at home with the parents, but to teach school, and while at home, she was to assist in caring for them and the household, as well as to furnish the means for their support and maintenance, pay the debts of the father, keep the house and improvements in repair and pay the taxes, etc. That she was to have the rents of the farm and out of that and her salary she was to meet all of said obligations, in consideration of which the father agreed to will them the forty acres of land in controversy.

Fountain K. Thompson also testified that Harriett and Sophia agreed with their father to do all of said things in consideration that he would will them said land.

The evidence is uncontradicted that they faithfully and religiously did and performed all of the matters and things required of them by the terms of said alleged contract. Even the defendant concedes that, but contends that all of those things were done by them as members of the family and for love and devotion to their father and mother, and not in pursuance to a contract imposing those duties and obligations upon them.

It is also undisputed that the father, either in pursuance to that contract or for some other reason not disclosed by this record, did, as a matter of fact, will said forty acres of land to Harriett and Sophia, but through the mistake or inadvertence of the scrivener who drew the will, omitted to name therein any of the other children, and in consequence thereof the will was, under our Statutes of Wills, insufficient to convey the entire interest of the father in and to the land to said daughters, leaving the other children as pretermitted heirs.

Recognizing the justice of respondents' claim to the land, all of the children except the appellant con-

veyed by quitclaim deed their respective interests in
and to said land to respondents; but the appellant,
Elliott W. Thompson, at all times denied their right to
his one-seventh interest therein. As far back as Aug-
ust 1899, shortly after the death of his mother, he
brought a suit against all of the children to partition
the land, whereupon Harriett, one of the defendants
in that suit, filed a motion for costs, stating therein
that the plaintiff there, and the appellant here, had no
interest in said land and that he was insolvent. The
court sustained that motion, and the plaintiff having
failed to secure the costs within the time fixed by the
court, the court dismissed the suit at the January term,
1900, of the court; since which time, appellant has not
molested the possession of respondents or made any
legal claim thereto.

After the dismissal of that suit, the respondents
have been in the exclusive, continuous, notorious and
adverse possession of the land, claiming title thereto
against the world, and especially against the appellant,
and long prior to that date for that matter.

During all of these years the respondent has been
receiving the entire issues, rents and profits of the
land, paid the taxes thereon and has built a house and
made other valuable improvements thereon, costing
$2500, all of which was well known to the appellant.

Upon this evidence and state of the record, the cir-
cuit court found the issues for the respondent, and en-
tered judgment quieting the title to the land in their
favor, and against the appellant.

There has been so much said and written by this
court upon this question that I feel it would be useless
to prolong this opinion by adding anything thereto;
and will therefore curtail the same by stating that, in
our opinion, the findings and decree of the court, quiet-
ing the title in favor of the respondents were correct,
and are fully supported by the following cases: Sut-
ton v. Hayden, 62 Mo. 101; Hiatt v. Williams, 72 Mo.

214; Gupton v. Gupton, 47 Mo. 37; Healey v. Simpson, 113 Mo. 340, 1. c. 346; Hall v. Harris, 145 Mo. 614; Koch v. Hebel, 32 Mo. App. 103; Sharkey v. McDermott, 91 Mo. 647; Fuchs v. Fuchs, 48 Mo. App. 18; Carney v. Carney, 95 Mo. 353; Berg v. Moreau, 199 Mo. 416; Nowack v. Berger, 133 Mo. 24; Russell v. Sharp, 192 Mo. 270; Walker v. Bohannan, 243 Mo. 119; Forrister v. Sullivan, 231 Mo. 345; Collins v. Harrell, 219 Mo. 279; Wales v. Holden, 209 Mo. 552; Kirk v. Middlebrook, 201 Mo. 245; Oliver v. Johnson, 238 Mo. 1. c. 376; Kinney v. Murray, 170 Mo. 1. c. 700.

If, perchance, any member of the bar wishes to read the views of this court regarding this class of cases, he will find them fully expressed in the cases cited.

III.   Appellant complains of the action of the trial court in permitting Harriett and Sophia to testify to certain matters which transpired subsequent to the death of their father.

Since this testimony was admitted upon other theories of respondents' case and not considered by the trial court in its determination of this branch of the case, which alone involves the contract in question, we deem it unnecessary to pass upon that testimony or on the legal propositions predicated thereon, for in no event could a ruling thereon affect the conclusions reached in paragraphs one and two of the opinion.

Finding no error in the record, the judgment of the circuit court is affirmed.