A. M. SILLS, KATHERINE J. SHARP, R. L. YANCY, ERNEST E. SMITH, SAMUEL J. BROWN, FINDLAY-MARLBOROUGH REALTY COMPANY, GUY W. HINSEN, CORA B. O'REILLY and KATE R. CLARK, Appellants, v. MISSOURI SECURITIES CORPORATION, STANDARD INVESTMENT COMPANY and ELBERT A. READ.—5 S. W. (2d) 389.

Division One, March 3, 1928.

180

*A. N. Gossett* and *Watson, Gage & Ess* for appellants.

*Fyke & Hume* and *Clarence S. Palmer* for respondents.

ATWOOD, J.—This is a suit in equity to cancel certain special tax bills issued by Kansas City, Missouri, in payment for the construction of four joint district sanitary sewers in Sewer Division Number 5, in Kansas City, Missouri, under four different ordinances. The defendants filed separate demurrers alleging in common that the petition did not state facts sufficient to constitute a cause of action, and that there was a misjoinder of causes of action. The trial court sustained all the demurrers upon the single ground that the petition failed to state a cause of action against any of the defendants. Plaintiffs declining to plead further, final judgment was rendered against them from which they have appealed. The amount alleged to be in dispute gives us jurisdiction.

Plaintiffs' petition is in two counts. The first count challenges the validity of the tax bills as a whole, and the relief sought is a decree holding them invalid, providing for their proper cancellation, and enjoining the prosecution or commencement of any suit or suits thereon. The second count seeks a *pro tanto* cancellation of said tax bills because of the alleged omission from the assessment of various tracts of land properly within the benefit area of the improvement in payment for which the tax bills in question were issued, and for corresponding injunctive relief.

The first count of the petition alleges that the Board of Public Works of Kansas City, Missouri, on or about August 3, 1917, adopted Resolution No. 7647 recommending the construction of a joint district sewer which should extend from a point in the Paseo from the center of 66th Street to an outlet constructed under Ordinance Number 13959; that due publication thereof was made, bids were received, and contract for the construction thereof was awarded to one Michael Walsh for $165,188; and that thereafter said board rescinded said contract, and no joint district sewer was ever constructed under said resolution. The petition further alleges that plaintiffs are severally the owners of certain tracts of land therein described; that defendant Elbert A. Read is the owner of two series of special tax bills for the construction of joint district sewers, one series under Ordinance Number 32305, approved February 21, 1918, the other series under Ordinance Number 32488, approved March 21, 1918; that defendant Missouri Securities Corporation is the owner of tax bills issued for joint district sewer constructed under Ordinance Number 33133, approved June 25, 1918; and that defendant Standard Investment

Company is the owner of tax bills issued for joint district sewer under Ordinance Number 39183, approved December 2, 1920.

It further appears from the petition and exhibits thereto annexed that Ordinance Number 32305, enacted pursuant to Resolution Number 7964, provided for the construction of a joint district sewer extending "from a point north from 55th Street to an outlet in a joint district sewer constructed under Ordinance No. 13959, approved Sept. 15, 1912," to be known as "Section No. 1, Town Fork Sewer," composed of sewer districts numbered 403, 407, 366, 367, 457, 458, 459, 460, 463 to 480 both inclusive, 484 and 485, and the construction cost thereof was levied against the real estate in said district at the rate of $.0007395421 per square foot, tax bills being issued against said property in the sum of $80,912.37; that Ordinance Number 32488, enacted pursuant to Resolution 7965, provided for the construction of a joint district sewer "the course of which was generally from a point easterly in 60th Street from a point west of Prospect Avenue" to an outlet in the sewer constructed under above Ordinance 32305, to be known as "Sec. 2, Town Fork Sewer," composed of the same sewer districts as those numbered in Ordinance Number 32305, except sewer districts numbered 477 and 478, which were omitted, and the construction cost thereof was levied against the real estate in said district at the rate of $.00090207 per square foot, tax bills being issued against said property in the sum of $95,766.81; that Ordinance Number 33133, enacted pursuant to Resolution Number 8020, provided for the construction of a joint district sewer extending "from a point in Meyer Boulevard from Troost Avenue east" to an outlet in the sewer constructed under above Ordinance 32488, to be known as "Sec. 3, Town Fork Sewer," composed of sewer districts numbered 366, 367, 457 to 460 both inclusive, 463 to 471 both inclusive, and 480, 484, 485, 403 and 407, and the construction cost thereof was levied against the real estate in said district at the rate of $.000816275 per square foot, tax bills being issued against said property in the sum of $62,553.79; that Ordinance Number 39183, enacted pursuant to Resolution Number 9579, provided for the construction of a joint district sewer extending "from a point in the Paseo from the center line of 66th Street to an outlet in the joint district sewer constructed under Ordinance No. 33133," composed of sewer districts numbered 366, 367, 469, 471 and 485, which were all included in the joint sewer districts organized under Ordinances Numbered 32305, 32488 and 33133, but which were only a portion of said sewer districts, and the construction cost thereof was levied against the real estate in said district at the rate of $.00087452215 per square foot, tax bills being issued against said property in the sum of $16,250.

It is further alleged in said first count of the petition that "joint district sewers constructed under said Ordinance No. 32305, No.

32488, No. 33133 and No. 39183, constituted and were parts of a single line of main sewer, or were extensions and enlargements of a single line of main joint district sewer; that those parts of said line of sewer known and described as Sections 1, 2 and 3 of Town Fork Sewer, constructed respectively under said Ordinances No. 32305, No. 32488 and No. 33133, were the same line of sewer and followed the same course as the one described in said Resolution No. 7647; that said joint district sewers constructed under said ordinances were in fact and physically but one single improvement; that the division of said improvement into sections and the assessment of the cost of each section thereof against the land in the overlapping joint sewer districts of unequal size, as heretofore set forth, was in violation of the Charter of Kansas City, Missouri, and particularly in violation of Sections 7 and 8 of Article 8 of said charter.'' It is further alleged that ''similar obstacles were encountered in the construction of all the joint district sewers heretofore set forth; that with respect to all of said sewers it was necessary to excavate earth, loose rock and solid rock in large quantities; that sewer pipe of the same or approximate size was used in the construction of all of said sewers; that the length and point of beginning for the joint district sewers heretofore described was not determined or ascertained because of reasons of engineering; that the controlling reason for dividing into sections the improvement contemplated under said Resolution No. 7964 was that the total cost thereof would be divided into three parts approximately equal and thus greater competition in bidding would be secured; that said Board of Public Works failed to divide said improvement approved under said Resolution No. 7964 into sections approximately equal in length or cost, but that, on the other hand, under the division so made said Sections 1, 2 and 3 were grossly unequal both in length and estimated cost; that the boundaries of joint sewer districts organized under said Ordinances No. 32488, No. 33133 and No. 39183 were laid out without regard to the benefits to be conferred upon the land owners by the construction of the sewers in question; that said Board of Public Works and the Common Council of Kansas City failed and refused to include within the boundaries of any or all of the joint sewer district organization as above set forth Sewer Districts 488 and 489 of Kansas City, Mo., which sewer districts lay within the natural drainage area of the joint sewer districts so formed and organized and consisted of land properly assessable for its proportionate share of the said construction cost; that plaintiffs' land has been subjected to a quadruple assessment and taxation for the construction and extension of a main line of sewer to a point at which it will be available for plaintiffs' use, and that other land within such joint sewer districts and within the natural drainage area of the joint district sewer so constructed was assessed and taxed only once

for its proportionate share of the construction cost thereof; that gross inequalities in the assessment for the cost of construction and extension of joint district sewers have resulted; that plaintiffs' land has been assessed at the rate of $.00333260925 per sq. ft.; that other land within the natural drainage area of said main line of sewer and its said extensions have been assessed for the varying amounts of $.0024578871 per sq. ft. and $.0016416121 per sq. ft. and $.0007395421 per sq. ft., depending on the location of such tracts of land; that such unequal assessments were made for the cost of constructing and extending a single main joint district sewer to a point at which it would be available for use to the property thus respectively assessed." It is further alleged that "by reason of the foregoing, said Ordinances No. 32305, No. 32488, No. 33133 and No. 39183 and the assessments thereunder are based upon a fundamentally wrong principle and are the creatures of fraud and the product of legislative whim and caprice, in violation of the common rights of plaintiffs and imposing burdens without corresponding benefits to them; that said ordinances are in violation of the Charter of Kansas City, Missouri, and particularly in violation of Sections 7 and 8 of Article 8 thereof, and that plaintiffs are deprived of their property by reason of such ordinances and assessments thereunder without due process of law, in violation of Section 30 of Article 2 of the Missouri Constitution and in violation of the 14th Amendment of the Federal Constitution."

The second count of plaintiff's petition alleges that "the joint district sewers constructed under said Ordinances 32305, 32488, 33133 and 39183 constituted and were parts of a single line of main sewer or were extensions and enlargements of a single line of main joint district sewer;" that under all of said ordinances the Board of Public Works and Common Council of said city failed and neglected to include within the bounds thereof sewer districts 488 and 489; that in the organization of the joint sewer district under said Ordinance 32488 said city also "failed and neglected to include within the bounds of such joint district sewer district the land situate in Sewer Districts 403, 478;" that in the organization of the joint sewer district under said Ordinance 33133 said city "failed and neglected to include within the bounds of said joint sewer district . . . the lands situate in Sewer Districts No. 472, 473, 474, 475, 478, 479;" and that in the organization of the joint sewer district under said Ordinance 39183 said city "failed and neglected to include within the bounds of said joint sewer district . . . the lands situate in Sewer Districts 403, 407, 366, 367, 457, 458, 459, 460, 463, 464, 465, 466, 467, 468, 469, 470, 471, 476, 477, 480, 484, 485."

Plaintiffs' petition covers some forty-five pages of the printed abstract of the record, but without further reference thereto it is apparent that the four joint district sewers were constructed at different times, beginning at an outlet in a joint district sewer con-

structed in 1912 and proceeding regularly from the lower to the higher levels of a certain drainage area, the second joint district sewer emptying into the first, the third into the second, and the fourth into the third. It is obvious that the lower area of the joint sewer district first formed which could be drained directly into the joint district sewer then constructed would in no way be benefited by the construction of the second joint district sewer on the next higher level, all of these sewers being sanitary and not storm sewers. The same situation appears with reference to the third and fourth joint district sewers. Consequently, it may be presumed that the sewer districts which were included in the joint sewer district first established and omitted from the second, third and fourth joint sewer districts, respectively, consisted of lower areas which would not have been benefited by the construction of the joint district sewers on upper levels. So much for the physical aspects presented by the pleadings.

We turn now to an examination of the ground upon which the trial court sustained the demurrers to the petition, namely, that it failed to state a cause of action. Apparently no significance is attached to the pleading that contract for the construction of the joint district. sewer recommended by resolution on August 3, 1917, was afterwards rescinded by the city. Such rescission was authorized by Section 3, Article 8, of the City Charter. Kansas City's power to organize sewer districts and joint sewer districts, to contruct sewers therein, and to cause tax bills to be issued on property in such districts is derived from the charter of Kansas City adopted in 1908, and particularly Sections 7 and 8 of Article 8 thereof which are as follows:

"Sec. 7. *District Sewers—Change of District—Construction Of— Computation of Cost Of—Cost Apportioned—Payment by Special Tax Bills—City's Liability Limited.*—District sewers shall be constructed or reconstructed within the limits of the districts heretofore or hereafter established by ordinance, as the case may be. Any sewer district heretofore or hereafter established may be subdivided, enlarged or changed by ordinance at any time previous to the construction of any district sewer therein. But no such district shall be subdivided, enlarged or changed after a district sewer shall have been constructed therein. The city may, with the approval of the Board of Public Works, from time to time, cause a district sewer or sewers to be constructed or reconstructed in any sewer district heretofore or hereafter established, and such sewer or sewers shall be prescribed by the Board of Public Works and confirmed as herein required by ordinance. Any district sewer heretofore or hereafter constructed, may be changed, diminished, enlarged or extended, and shall have such laterals, inlets and other appurtenances as may be prescribed by the Board of Public Works and confirmed by ordinance. As soon as the work of constructing, changing, diminishing, enlarging or extending any district sewer shall have been completed un-

der a contract let for the purpose, the Board of Public Works shall compute the whole cost thereof, and apportion and charge the same as a special tax against the lots of land in the district, exclusive of the improvements, and in the proportion that their respective areas bear to the area of the whole district, exclusive of the streets, avenues, alleys and public highways, and shall, except as in this article provided, make out and certify in favor of the contractor or contractors to be paid, special tax bills for the amount of the special tax against each lot or parcel of land in the district. . The city shall in no event, nor in any manner whatever, be liable for or on account of the cost of work done in constructing, changing, diminishing, enlarging or extending any district sewer, except as in this article provided.

"Sec. 8. *Joint Sewer Districts—Construction of—Cost of—Contract to Specify What—Tax Bills.*—Whenever the city may deem it necessary that a sewer should be constructed or reconstructed in any part of the city containing two or more sewer districts it may, by ordinance, unite such sewer districts into a joint sewer district and cause a sewer to be constructed therein in like manner in all respects as is provided in Section seven (7) of this article in cases of district sewers, except in cases of joint district sewers the city may, if deemed proper, provide in the ordinance creating such joint district sewer that the city shall pay a certain sum to be specified in said ordinance, toward the payment of the cost of such joint district sewer; and should the Common Council, by ordinance, unite two or more sewer districts into a joint sewer district for the purpose of constructing a joint district sewer therein, the action of the Common Council shall be conclusive for all purposes, and no special tax bills shall be held invalid or be affected on account of the included drainage area thereof, or the size, character and purpose of such sewer; *Provided, however,* That no sewer district shall be included in such joint district which is not included in the natural drainage area of the valley or water course in which the joint district sewer is proposed to be constructed. The contract for the construction of such sewer shall specify that the city shall be liable for the sum so specified to be paid by the city, and that the remainder of the cost thereof shall be paid in special tax bills, to be issued in any manner that is or may be provided for the issuing of tax bills for the construction of sewers."

Section 5, Article 8 of the same charter reads as follows:

"The general sewer system of the city shall be divided into four classes, to-wit: Public, district, joint district and private sewers. The city may, by ordinance, find and determine the class to which any sewer belongs, and the finding and determination of the city in that respect shall be final and conclusive."

A separate section of the same article is devoted to each of the classes named. It is plain that above Section 7 relates exclusively

to sewer districts, while Section 8 pertains to joint sewer districts. We are here concerned only with the creation of joint sewer districts and the construction of joint district sewers therein. Appellants point to no provision in Section 8 which condemns the course pursued by Kansas City in the case stated, but rest their complaint largely upon the claim that the provision in Section 7 that "no such district shall be subdivided, enlarged or changed after a district sewer shall have been constructed therein," is made a part of Section 8 by reference. The supposed reference is in that part of Section 8 which empowers the city upon uniting two or more sewer districts into a joint sewer district to cause a sewer "to be constructed therein in like manner in all respects as is provided in Section seven (7) of this article in cases of district sewers." The reference is obviously limited to provisions relating to the construction of sewers, while the provision in Section 7 which appellants seek to incorporate in Section 8 clearly relates to the establishing of a sewer district and not to the construction of a sewer. We are not aware of any rule of interpretation by which this provision can or should be made a part of Section 8.

As far as the last three joint sewer districts are concerned our above conclusion effectually disposes of appellants' first challenge of their validity, namely, that after a joint sewer district has been established and a joint district sewer has been constructed therein no district included in the joint sewer district and in the same drainage area can be included in a new joint sewer district. There is only one limitation in the charter upon the city's power to create joint sewer districts, and that is in the provision of Section 8, Article 8, "that no sewer district shall be included in such joint district which is not included in the natural drainage area of the valley or water course in which the joint district sewer is proposed to be constructed," and this exception is excluded by the petition which specifically states that all these sewer districts are in the same drainage area.

As for appellants' charge that the omission of Sewer Districts 488 and 489 from each of the four joint sewer districts affects their validity, we think it too is without merit. There is no requirement in the Charter that all the land in a drainage area shall be included in a joint sewer district. The petition alleged that these sewer districts lay within the natural drainage area of said joint sewer districts and consisted of land properly assessable for its proportionate share of said construction cost. But the Charter expressly provides (Sec. 8, Art. 8) that "should the Common Council, by ordinance, unite two or more sewer districts into a joint sewer district for the purpose of constructing a joint district sewer therein, the action of the Common Council shall be conclusive for all purposes, and no special tax bills shall be held invalid or be affected on account of the included drainage area thereof, or the size, character or purpose of

such sewer." The municipal legislature is thus vested with a discretion which is not subject to review by this court unless the powers of such legislature are affirmatively shown to have been exercised fraudulently, oppressively or arbitrarily. [Barber Asphalt Paving Co. v. Field, 194 U. S. 1. c. 624, 625; Prendergast Construction Co. v. Goldsmith, 273 Mo. 184; McGhee v. Walsh, 249 Mo. 1. c. 283; South Highland Land & Improvement Co. v. Kansas City, 172 Mo. 1. c. 530-531; Prior v. Construction Co., 170 Mo. 1. c. 451; Johnson v. Duer, 115 Mo. 1. c. 376.]

Appellants also say that "the division of this joint district sewer into sections and then assessing the benefits upon different areas provided in each of the sections instead of with reference to the one area required by the charter, deprived plaintiffs of their property without due process of law, and in violation of the 14th Amendment to the Constitution of the United States." As we have heretofore indicated the pleadings do not show that any joint district sewer was divided into sections. On the contrary it appears that each of the four joint district sewers was authorized and constructed in connection with a separate and distinct joint sewer district. The petition alleges the adoption of the requisite resolutions and ordinances relative thereto, and there being no allegations to the contrary it will be presumed that due publication was had in each instance of the time and place of hearing. In McGhee v. Walsh, 249 Mo. 266, in a suit in equity to cancel tax bills issued in connection with the construction of a district sewer, the proceedings were attacked, as in this case, on the theory that they violated Section 30, Article 2, of the Missouri Constitution and the 14th Amendment of the Federal Constitution. In the face of these attacks they were sustained, and on similar grounds the proceedings so attacked in this case are likewise sustained.

In their citation of authorities appellants have also labored under a misapprehension as to the meaning of Section 8, Article 8, of this Charter. Appellants cite Prior v. Construction Co., 170 Mo. 439; McGhee v. Walsh, 249 Mo. 266; Heman Construction Co. v. Lyon, 277 Mo. 628; and McMurry v. Kansas City, 223 S. W. (Mo. Sup.) 1. c. 620, in support of their contention that "plaintiffs as owners of the dominant estate are denied the acquired reciprocal right to the inclusion of the property constituting the servient estate, from the standpoint of drainage, in the area taxed for the extension of the sewer to a point where it becomes of benefit to the property of appellants." In reading Prior v. Construction Co., and Heman Construction Co. v. Lyon, it must be borne in mind that these cases arose under the St. Louis Charter which provided (Sec. 22, Art. 6) that a joint district sewer might be constructed in sections. In the Prior case the joint district sewer under consideration also served the purpose of a storm sewer and in caring for sur-

face water indirectly benefited the servient area. The Kansas City Charter contains no provision for the construction of a joint district sewer in sections. In the instant case each sewer constructed was the separate and distinct work of a separate and distinct joint sewer district, and they were all sanitary sewers, carrying sewage only and not surface water, thus extending no benefit to servient areas in protecting them from surface drainage. The McGhee case deals only with district sewers, and what was there said has no application to joint district sewers. The first quotation purporting to be from the McMurry case is in reality directly quoted from the Prior case, and for reasons already stated is not here applicable. The second quotation from the McMurry case relates to the cost of constructing certain laterals and extensions beneficial to the entire district, and makes no reference to the main joint district sewer. In South Highland Land & Improvement Co. v. Kansas City, 172 Mo. l. c. 532, it was argued that the provision regarding district sewers, that no district should be changed after a sewer had been constructed therein, also applied to joint district sewers. On this point the court said:

"From this it is argued that a joint district sewer once constructed, there can be no change, and the land once taxed for a district and joint district sewer cannot be taxed in any other district or joint district. Those provisions of the Charter mean that land that has once been taxed to build a district or joint district sewer cannot be taken out of such district or joint district and deprived of the use of the same, nor can it be placed in another similar district or joint district and subjected a second time to a like burden, nor can land which was not in the district or joint district when the sewers were built be added to the district or joint district and have a benefit for which it paid nothing."

Appellants quote extensively from our opinion in the above case, but substantially rest their entire argument therefrom on the words contained in the above excerpt "nor can it be placed in another similar district or joint district and subjected a second time to a like burden." However, upon a careful reading of the opinion as a whole it seems clear that the writer had in mind no such meaning as that which appellants would gather from this detached clause. Indeed, the very next sentence of the opinion breaks down the strained construction urged by appellants. It reads as follows:

"But they do not mean that land which has been taxed for the sewer system as far as the system has gone, may not be taxed for the extension of the system when extension, in the opinion of the lawmaking department of the city, is necessary."

Here is a plain, unequivocal holding exactly applicable to the facts now before us. Under Ordinance Number 32305 a joint sewer district was created and a joint district sewer was constructed, the cost of which was borne by all the land in the district. There-

after, in the opinion of the law-making department of the city an extension of the system becoming necessary, a new joint sewer district was created composed of certain of the sewer districts comprising the joint sewer district first created, and an extension of the system was constructed in the form of another joint district sewer at the cost of all the land in the joint sewer district last created. In a similar manner the third and fourth joint district sewers were constructed and their cost assessed. The effect of our ruling in South Highland Land & Investment Co. v. Kansas City is that if in the instant case the sewers had been constructed in the smaller joint sewer districts first, all the different sewer districts could have been united in a joint sewer district for the construction of a joint district sewer outlet through which they would discharge. Certainly it would make no difference if the outlet sewer were first built. When we consider the fundamental principle that a special assessment must rest upon some degree of benefit to the property assessed it necessarily follows that in such an extension of a sanitary sewer system by the creation of separate joint sewer districts and the construction of separate joint district sewers, certain sewer districts in servient areas not benefited by the joint district sewers constructed on upper levels should be omitted from the joint sewer districts thus successively created.

We now come to plaintiffs' other ground of relief reflected in the charge that the actions of the city in creating the successive joint sewer districts "are the creatures of fraud and the product of legislative whim and caprice." It is claimed that after the joint district sewer was constructed in the joint sewer district created by Ordinance Number 32305 it was unreasonable for the city subsequently to create the second, third and fourth joint sewer districts and construct and assess the costs of constructing the respective joint district sewers against the land situated in the respective joint sewer districts. We do not think the allegations of the petition set out any facts which would justify us in holding that in these matters the city acted arbitrarily or oppressively. There are no specific allegations as to the location of the different sewer districts with reference to each other, or the topography of the land in the several districts. We are simply met with assertions that the character of the soil was similar, that there were no engineering reasons why all the joint district sewers could not have been built together, that the total cost of building them separately was in excess of the bid which formed the basis of the first contract which was rescinded, and that the areas comprised in the second, third and fourth joint sewer districts were subjected to two, three and four separate assessments, respectively. We have frequently held that the mere fact that land is a part of an existing drainage district and has

paid benefits therein is not a valid objection to including it in a proposed district (South Highland Land & Improvement Co. v. Kansas City, 172 Mo. 523; Little River Drainage District v. Railroad, 236 Mo. 94; Sibbett v. Steele, 240 Mo. l. c. 93), and, of course, the fact that the total cost of the improvements constructed exceeded the amount of the bid which formed the basis of the contract rescinded some years previous does not in and of itself indicate arbitrary or oppressive action on the part of the city. The mere fact that the municipal legislature might have proceeded in a different manner is no ground for judicial review. In passing upon the reasonableness of the action of the Common Council in creating these joint sewer districts and constructing the joint district sewers therein we must consider the several situations that confronted them. Under Ordinance Number 32305 a joint district sewer had been constructed. In the judgment of the lawmaking body of the city it became necessary to extend the system so constructed and this joint district sewer was used as an outlet for the second joint district sewer constructed in the second joint sewer district thereupon created. Similar necessities arose which were in like manner met by the creation of the third and fourth joint sewer districts and the construction of the respective joint district sewers therein. It is nowhere alleged that these several improvements were unnecessary, and as we read and construe plaintiffs' bill it fails to state a case of fraudulent, arbitrary or oppressive action on the part of the city with respect thereto. The trial court properly sustained defendants' several demurrers on the ground that the petition failed to state facts sufficient to constitute a cause of action against defendants, and it becomes unnecessary for us to examine other grounds set up in the demurrers.

The judgment sustaining defendants' demurrers and dismissing plaintiffs' bill in equity is affirmed. All concur.